GALVESTON & WESTERN RAILWAY COMPANY v. THE CITY OF GALVESTON.

Decided February 15, 1897.

City—Railway in Streets—Forfeiture of Franchises.

The City of Galveston granted to a railway company the right to construct its line upon certain streets of that city, by an ordinance which provided that the privilege granted should be forfeited "if the said railway company fails to extend and build their road across the bay within five years from the passage of this ordinance." In a suit by the city to forfeit the license to occupy such streets so granted, and have the track of the company removed therefrom, because of its failure to construct its road across the bay within the time limited,—Held:

1. The limited authority delegated to city councils does not empower them to legislate on everything connected with the general subjects on which they are authorized to act. (P. 412.)

2. The city might annex to its consent for the use of its streets terms or conditions which require the performance by a railway company of those things which are within the power of the municipal corporation to regulate and enforce against a corporation or individual occupying such streets, such as the preservation of streets or crossings; but can prescribe no other terms. (P. 412.)

3. Such authority is the exercise of powers conferred by their charter, which embrace the doing of things necessary for the preservation of the streets and crossings for public use, and may be exercised as well after as at the time of giving the consent; and it does not arise out of the right to deny consent to the use of the street. (P. 412.)

4. It is not in accordance with the policy of the state on the subject of forfeitures of franchises that a public highway should be cut into two parts, and rendered practically valueless, and rights fully vested should be divested, by the ordinance of a town. (P. 413.)

5. The failure to comply with the condition in question did not authorize the forfeiture of the company's rights, or removal of its track. (Pp. 413, 414.)

ERROR to Court of Civil Appeals, First District, in an appeal from Harris County. The suit was brought by the city of Galveston to forfeit the license of the company to occupy certain streets and to have its track removed therefrom. Plaintiff obtained the relief sought and on defend-

ant's appeal the judgment was affirmed. The company thereupon obtained writ of error.

*Gresham, Jones & Wheless,* for plaintiff in error.—The city of Galveston has no powers except those expressly granted by its charter or that are necessarily incident to powers expressly granted. Williams v. Davidson, 43 Texas, 33; Dill. Mun. Corp., sec. 89; Cooley's Const. Lim., 192, and note; Schumm v. Seymour, 24 N. J. Eq., 144; Newport v. Railway, 24 S. W. Rep., 428.

As no power to forfeit property or property rights has been conferred upon appellee by its charter or the laws of this State, the forfeiture mentioned in section 10 of the ordinance is void as to appellant's constructed road. Galveston City Charter, sec. 160; Dill. Mun. Corp., sec. 3, 45; 33 N. H., 424; 41 Pa. St., 481; Maryland v. Railway, 3 How., (U. S.), 552.

It was contrary to public policy for appellee, in granting its assent to appellant to construct its railroad upon certain of its streets, to impose a condition to be performed after the railroad was built, the non-performance of which destroys the railroad as a public highway; and the tenth section of the ordinance of March 8, 1889, in so far as it may attempt to reserve the right to appellee to require the lines of railroad built and operated upon its streets by appellant to be removed, is void. Constitution of Texas, art. 10, sec. 2; Rev. Stats., arts. 4550, 4558; Dill. Mun. Corp., sec. 319 and note 2; Thomas v. Railway, 101 U. S., 71; Railway v. Railway, 10 Wall., 51.

The Legislature having conferred upon the Railroad Company the right to construct its railroad along and across the streets of the city, subject to the assent of the city, appellee in granting its assent could impose only such conditions as are prescribed in its charter or are incident to the exercise of its police powers. Rev. Stats., arts. 4426, 4438; Galveston City Charter, sec. 73; Cooley's Const. Lim., 577, 578; The maxim, "Expressio unius est exclusio alterius," is applicable.

The court erred in its judgment in that it grants to plaintiff the remedy sought in the petition, as to all that part of defendant's line of railroad west of Thirty-seventh street in said city, which is contrary to the Constitution and laws of the State of Texas, providing that the right of way, tracks, etc., of a railroad company in this State when once occupied and used as such, shall not be lost or forfeited by the forfeiture of the charter of such company, but shall ever remain subject to be used by any other railroad in the same way without condemnation or other proceedings, and declaring that a railroad in this State is a public highway and when once constructed and operated shall never be abandoned or removed.

*R. Waverly Smith, City Attorney, Wheeler & Rhodes* and *Hume & Kleberg,* of counsel, for defendant in error.—The council did not assume, by virtue of its sole and independent power, to effect a forfeiture of anything; but, merely declared in behalf of the city the occurrence of the default which the ordinance of March 8, 1889, provided should oper-

ate a forfeiture of the license thereby conferred, and relegated to the court the exercise of the function of adjudicating such forfeiture.

(1)   The passage of the ordinance of March 8, 1889, was the exercise of a lawful power, which the court rightly interpreted and justly enforced; and (2) if such ordinance was in any sense ultra vires, it was not so in such sense as that the appellant can be heard to aver the fact.   (1) Art. 4173, Rev. Stats., a re-enactment of sec. 23 of Act of August 15, 1876, Gen. Laws of 1876, 141-150; Galveston Charter, secs. 1, 34, 73; Taylor v. Dunn, 80 Texas, 666; Mayor of Houston v. Railway, 84 Texas, 585; Indianola v. Railway, 56 Texas, 594; Railway v. Leavenworth, 1 Dillon C. C., 393; Hovelman v. Railway, 79 Mo., 632; 2 Dillon Mun. Corp., sec. 706; 23 Am. and Eng. Encycl. Law, 977-8, indicating distinction between grant of franchise by Legislature and extention of license by municipality to occupy streets; 2 Wood's Railway Law, 987, stating rule as to obligation imposed by condition subsequent, and implying, by converse proposition, that such condition may be enforced by a city when the law renders its consent to the laying of railways in its streets necessary—adopted in Railway v. Dunman, 74 Texas, 265; Booth's Law of Street Railways, sec. 461.   (2) Bond v. Terrell Cotton and Woolen Mfg. Co., 82 Texas, 309, and Railway v. McCarthy, 96 U. S., 267, state the general rule; Indianola v. Railway, 56 Texas, 603; Edwards County v. Jennings, 33 S. W. Rep., 585; 2 Hermann's Est. and Res. Jud., secs. 1178-79; 27 Am. and Eng. Encycl. Law, 359-61, 363-6; 1 Beach's Pub. Corp., secs. 630, 705.   The following authorities, cited supra, apply here, also, Railway v. Leavenworth, 1 Dillon C. C., 393; 2 Dillon's Mun. Corp., sec. 706.

In support of a motion for rehearing, counsel for defendant in error urged:   Whether acquiring its right by virtue of a bond to respond in damages upon default in performing its undertaking, or by virtue of its acceptance and use of such right conditioned that it should be subject to forfeiture for failure to do the thing required by the grant, the railroad company would be in like case.   1 Rorer's Railroads, 230-1, 320; 1 Wood's Railway Law, 603; City of Bellville v. Railway, 38 N. E. Rep., 584; Mayor, etc., of Troy v. Railway, 49 N. Y., 657; Inh. of Cambridge v. Railway, 48 Mass. (7 Met.), 72; Aikin v. Railway, 26 Barb. (N. Y.), 298; Conger v. Railway, 15 Ill., 366; Railway v. Deitz, 50 Ill., 210; Cowell v. Springs Co., 100 U. S., 55; 2 Devlin's Deeds, secs. 1047, 1077; Jeffrey v. Graham, 61 Texas, 481; Improvement Co. v. Dawson, 5 Texas Civ. App., 487.   The bond could be enforced no more than the forfeiture if the thing required to be done was beyond the city's power to exact.

The motion for rehearing was overruled.

BROWN, Associate Justice.—The city council of the city of Galveston adopted a resolution on the 21st day of May, 1894, declaring that all privileges, rights, grants, etc., theretofore conferred upon the Galveston and Western Railway Company by the city of Galveston be declared forfeited, and instructing the city attorney of the city of Galves-

ton to institute and prosecute a suit or suits for the purpose of having such forfeiture judicially declared. In pursuance of this resolution, this action was commenced and prosecuted in the name of the city of Galveston against the said railway company to forfeit the license granted to it by the city to occupy with its railroad certain streets of the city, and to have the track of the company removed therefrom.

The petition set out in detail the facts relied upon by the plaintiff, which we state in substance as follows:

In 1875 the Legislature of Texas, by a special act, created the Galveston, Brazos and Colorado Narrow Gauge Railroad Company, and authorized it to construct a narrow gauge railroad commencing at a point within the limits of the city of Galveston; thence westward on Galveston Island across West Bay, etc. Under that charter the railroad company constructed a narrow gauge railroad on Avenue A, to and along Ninth street, to Avenue N; thence along Avenue N westwardly to 37th street, and southward along the last named street to Avenue T; thence with this avenue westward to 53rd street, and south and west to and across 57th street to the western limits of the city, and also beyond the limits of the city to Lafitte's Grove, on Galveston Island, near the bay, about 12 miles from the city limits.

The Galveston, Brazos and Colorado Railroad Company executed a deed of trust upon its railroad, to secure $100,000 of its bonds, to the Guaranty Trust and Safety Deposit Company, under which deed of trust the property was afterwards sold to Charles S Henchman, who conveyed it to the Texas and Mexican Railroad Company on July 1, 1881, the last named company having been duly incorporated under the general laws of the State of Texas on the 4th of March, 1881.

The Galveston and Western Railroad Company was duly chartered under the general laws of the State of Texas on December 9, 1887, to construct a railroad beginning at a point on Galveston Bay; thence along and upon the streets of the said city to a point in Galveston County at or near Caronkaway Reef, a distance of about 15 miles from the place of beginning. On July 17, 1889, the charter of the railroad company was amended so as to describe the streets which the railroad did afterwards actually occupy.

Under a valid judgment and execution against the Texas and Mexican Railroad Company, the property belonging to it in the city and county of Galveston was sold to the Galveston and Western Railroad Company, after which, on the 8th day of March, 1889, the city council of the city of Galveston adopted an ordinance granting to the last named railroad company the right to occupy the streets therein named, of which we insert the following extracts:

"Section 1. That the rights of way heretofore granted in the city of Galveston to the Galveston, Brazos and Colorado Narrow Gauge Railway Company, and to the Texas-Mexican Railway Company, on Ninth street, from Avenue A to Avenue N; thence along Avenue N to Thirty-Seventh street; thence along Thirty-Seventh street to Avenue T; thence

westwardly along T to Fifty-Fifth street, with the right to curve south and west at any point west of Fiftieth street, be and the same are hereby confirmed. The right to construct, maintain, own and operate a railroad with either broad or narrow gauge tracks, or both, and with such side-tracks, turnouts and switches as may be necessary be and the same are hereby granted to the Galveston and Western Railway Company, as the successor of said railway companies, over and along the above mentioned streets, and on Avenue N, west from Thirty-Sixth street, with the right to curve northwardly from Avenue N, at any point west of Fortieth street, into Forty-Third street, or at any street west of, and parallel to, Forty-Third street that said railway may select and occupy; thence northwardly down the street selected, with the right to connect with tracks of the Galveston, Houston and Henderson Railway Company and the Gulf, Colorado and Santa Fe Railway Company at a point west of Forty-Third street. That the said railway company shall construct, operate and maintain its railway on the streets over which the right of way is hereby confirmed and granted within one year from the date hereof, otherwise the rights herein granted shall be forfeited.

"Sec. 3. There is also hereby granted to said Galveston and Western Railway Company the right to construct, own, operate and maintain a railroad over and along Avenue N from Thirty-Seventh street to the western limits of the city, with the right to curve southwardly from Avenue N into and thence along any street west of Fortieth street; thence westwardly into and thence along any avenue to the western limits of the city, with the right also to curve southwardly from the avenue selected into, and thence along any street west of Forty-Third street; thence to a connection with its present line.

"Sec. 10. That all the privileges, rights, grants, etc., under this ordinance shall be forfeited if the said railway company fails to extend and build their road across the bay within five years from the passage of this ordinance."

The only ground of forfeiture alleged against the Galveston and Western Railroad Company is that it failed to complete its railroad across the bay within five years from the date of the ordinance giving the consent of the city to its occupancy of the streets.

To the petition the railroad company interposed a general demurrer, which the District Court overruled, and upon the trial judgment was rendered against the railroad company declaring forfeited all of the rights acquired by it under the ordinance of March 8th, 1889, and directing the removal of its track and property from certain streets of the said city. A more detailed statement of the judgment is unnecessary to the consideration of the question before us.

The Court of Civil Appeals affirmed the judgment of the District Court, with a slight modification. The plaintiff in error assigns as ground of error the overruling of its general demurrer by the District Court, and under that assignment presents the following question: When the city of Galveston gave its consent for the plaintiff in error

to occupy its streets with its railroad had the city council the power to annex to that consent a condition of forfeiture upon the failure of the railway company to construct its railroad across the bay within five years from the date of the ordinance?

The Legislature of a State has authority, unless restrained by the Constitution, to grant to a railroad company the right to construct its road over or along streets or other public highways without first obtaining the consent of the local authorities. If, however, the privilege of occupying such highways has not been expressly or impliedly granted, no railroad company has the right to use such highways without the consent of the authorities which have control over them. 2 Dill. Mun. Corp., sec. 707 and notes.

Prior to the act of February 8, 1860, entitled "An act supplementary to an act supplementary and amendatory of an act to regulate railroad companies approved February 7, 1853, approved December 19, 1857,"— there was no general law in this State by which railroad companies could acquire the right of way over private property nor was there any such general law granting to them the right to occupy the public highways. The authority to acquire the right of way over private property and such rights of using streets as they possessed were granted by the terms of their charters.

The act referred to contained the following section:

"Sec. 21. That any railway company duly chartered by the laws of this State, shall have the right to construct the main track of its road through the corporate limits of any city or town in this State, which may be in the line of said railway, and for such purpose may use any of the public streets, alleys and highways of such city or town, or private property, in the same manner and subject to the same rules and regulations mentioned in the sixteenth section of this act: Provided that the company owning said road shall pay the damages for any private property taken, but shall not be required to pay any damages for the use of any streets, alleys or highways so taken or to be so taken and used: and further provided, that if the passage of said line of road through or over any public street, alley or highway of such city or town shall be opposed or obstructed by the people or authorities of such city or town, after the same shall have been designated by the State Engineer, or such other person as the Governor may appoint, then and in that case such company, in its discretion, may select the line of its road so as to pass around said town, in which case it shall have the right to recover by suit, of such city or town, damages occasioned by such opposition or obstruction."

The language of the above section is somewhat ambiguous but it seems to confer upon railroad companies the authority to use streets and public highways subject to objection on the part of the local authorities, in which event the dispute was to be settled by the State Engineer or other person appointed by the Governor. The railroad company was given the election of going around the town in case objection was made by

the town after a street had been designated according to the provisions of the law, and in such case the railroad company could maintain action for damages against such town or city. From this language it would seem that the city or town might absolutely refuse to permit the railroad company to pass through its corporate limits and over its streets or alleys, being responsible for the damages occasioned thereby.

In 1876 the Legislature of the State enacted a law which contained the provisions now embraced in our Revised Statutes as found in the following articles:

"Art. 4426. Such corporation shall have the right to construct its road across, along or upon any stream of water, water course, street, highway, plank road, turnpike or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

"Art. 4438. Nothing in this chapter shall be so construed as to authorize the construction of any railroad upon or across any street, alley, square or highway of any incorporated city or town without the assent of the corporation of said city or town."

By the change made in the statute the Legislature intended to give to towns and cities the unqualified right to consent or refuse without liability for damages.

Counsel for the city of Galveston claim that, under the articles of the Revised Statutes quoted, the city could lawfully attach to its consent any conditions that it might choose to prescribe, and upon the breach of such conditions the consent of the city to use the streets might be revoked and the railroad removed. The following cases, of many relied upon, in support of the validity of the condition prescribed by the city of Galveston, we consider to be most in point: Railway v. City of Leavenworth, 1 Dillon, C. C., 393; Railway v. Nave, 38 Kan., 744; Railway v. Mayor and C. C. of Baltimore, 21 Md., 93; Railway v. City of Lawrenceburg, 34 Ind., 304; State v. Street Ry. Co., 72 Wis., 612; Indianola v. Gulf, Western Texas and Pacific Ry. Co., 56 Texas, 594.

The case of Railroad Company v. Leavenworth City, cited above, arose under a statute of the State of Kansas, which is quoted by Judge Dillon as follows: "Every railway corporation may construct its road across, along, or upon * * any street, highway, etc., but the company shall restore the same to its former state, etc. Nothing herein contained shall be construed to authorize the construction of any railroad not already located in, upon, or across any street in any city incorporate, or town, without the assent of the corporate authorities of such city." The city of Leavenworth passed an ordinance granting to a railroad company the privilege of occupying certain streets upon conditions named in the ordinance and expressly provided that the ordinance should not take effect until the terms and conditions expressed therein had been embodied into a contract and signed by the railroad company, which was done. By the

written contract the railroad company agreed to build a depot of certain description, and to rip-rap a street, within a given time, and it was expressly stipulated in the contract that, upon failure of the railroad company to comply with its stipulations, the city should have the right to enter upon and take possession of the streets and remove the track and property of the railroad company therefrom. In the opinion filed by Judge Dillon, he uses language broad enough to support the proposition that a city can base its consent for a railroad to occupy its streets upon any condition which the city may impose. But this language is qualified in a subsequent part of the opinion by saying that the city may prescribe any lawful and proper terms. If the terms must be lawful and proper, they must not conflict with the law,—and the city has not the absolute right to prescribe the conditions. But Judge Dillon rests his decision in that case upon the fact that the railroad company had entered into a contract by which it agreed to the conditions imposed by the city. The learned Judge said: "In re-entering and taking possession the city has done nothing but that which the company agreed it might do in the contingency of a failure to perform its agreement." That case was not decided upon the ground that the failure to perform the agreement worked a forfeiture of the right in the sense in which it is claimed in this case for, upon the railroad company agreeing to perform the stipulations of its contract, an injunction was granted to prevent the city from removing the railroad track from the streets, which would not have been done if the right of the railroad company in the streets had been absolutely terminated.

In Railway Company v. Nave, supra, certain property owners sought to enjoin a street railway company from constructing its road upon the street in front of their property, alleging that owing to the condition of the street it would be a nuisance and would practically destroy the value of their property, and upon the further ground that the consent of the city to the construction of the street car line upon the street had not been obtained. The court found both of these grounds to be sustained by the testimony.

Under the laws of Wisconsin, a street railroad company, although chartered by the State, obtained its only authority to operate a street car line through the ordinance of the city, without which it could not construct the road, and upon violation of any of the terms and conditions prescribed in the ordinance its charter would be forfeited by virtue of the general laws of that State. In the case of the State v. Madison Street Railway Company, before cited, the court held that under the terms of the ordinance the railway company had forfeited its existence as a corporation and that a suit could be maintained to declare that forfeiture judicially and enforce it. That case, however, did not involve the removal and destruction of the railroad property.

The City of Lawrenceburg in the State of Indiana granted to a railroad company a license to construct its road upon a certain street of that city, prescribing as a condition that the railroad company should grade

the street so as to conform to the grade of the railroad. The railroad company constructed its road on the street upon an embankment which practically destroyed the street for public use and, upon refusal of the railroad company to do so, the city filled up the street, to conform to the grade of the railroad. Suit was brought against the railroad company for the cost of the work, which the court allowed to be recovered; but that case did not involve any question of forfeiture of the right of way. Railway v. Lawrenceburg, before cited.

The Legislature of the State of Maryland granted to a railroad company the right to build upon the streets of the city of Baltimore to a certain point, prescribing as a condition precedent that it should first obtain the assent of the mayor and city council of that city. The consent of the city was given by ordinance prescribing terms as to the grades of the streets and crossings. The railroad company attempted to build upon the streets without conforming to the requirements as to the grades and the Supreme Court of that State in the case of Railroad Company v. The Mayor and Common Council of Baltimore said: "By the charter of the city of Baltimore and its supplements, the State has conferred upon the mayor and city council full and complete jurisdiction and control over the streets and highways, with power to fix and determine their grades with a view to the public convenience. The act of 1853 (which granted to the railroad the right to build on the streets) did not design to take away from the Municipal Legislature this jurisdiction and control, so essential to the welfare of its citizens and the public. On the contrary, while conferring upon the appellant the right to construct its railway over the streets of the city, the general assembly has declared, as a condition precedent, that 'the assent of the mayor and city council shall be first had and obtained,' thus referring the subject to the action of the city authorities, who have the power to grant or refuse their assent to the proposed work. Nothing can be clearer than in such a case, the power reserved by the act of the mayor and city council over the subject, is complete and unimpaired, and necessarily involves the right of prescribing the terms and conditions upon which their assent is given." The court held that the city council had by its charter the power to fix and determine the grades of the streets and could in giving its assent to their use by the railroad company require it to conform to the grades of the streets and crossings as fixed by the city.

After deciding the case correctly under the charter powers of the city and the statute referred to, the court in support of its decision quotes from Mager v. Grima, 8 Howard, 490, the following language of Chief Justice Taney: "If a State may deny the privilege altogether, it follows that when it grants it it may annex to the grant any conditions which it supposes to be required by its interests or policy." Judge Taney was speaking of a body clothed with all the legislative power that belongs to a Republican Government, while the court of Maryland applied the language used by him to a body which had only such power and authority as was granted to it by its charter. The quotation has no application to the

case and the decision was not based upon it, but Judge Dillon, in the case of Railway v. Leavenworth, uses much the same language as that quoted from Railroad v. Mayor and C. C. of Baltimore, citing that case as authority. Other courts and text writers have cited Judge Dillon in support of that proposition expressed in the language of Judge Taney, and thus a doctrine which originated in the misapplication of a correct rule of law is maintained as a basis for the solution of questions like that presented in this case, notwithstanding it is directly antagonistic to the fundamental doctrine that a municipal corporation has no power except that which is conferred by its charter.

Defendant in error cites, in support of the judgment of the court below, the case of Indianola v. The Gulf, Western Texas and Pacific Ry. Co., 56 Texas, 594. That case was decided by the Commission of Appeals before the law authorized or required the Supreme Court to approve the opinion. Hence, the opinion was not approved. The case is therefore not authority and can only be considered for the force of its reasoning in aiding us to solve the question under consideration. The facts were briefly these: A railroad company, to which the Gulf, Western Texas and Pacific Ry. Co. was successor, desired to construct a railroad through the streets of the city of Indianola. Application was made to the city council for its assent, which was at first refused, but afterwards given by the adoption of an ordinance which attached to the consent given the condition that the railroad company should within a specified time construct its railroad at least sixty-five miles beyond the limits of the city, and in case it failed to do so should pay the city the sum of $50,000 as liquidated damages. The ordinance also required the railroad company to enter into bond to perform the terms imposed upon it, and the company in compliance therewith executed its bond obligating itself as required by the ordinance. The opinion in that case rests solely upon the proposition that the railroad company, having obligated itself to construct its road a certain distance within a given time, and having agreed upon the sum of $50,000 as liquidated damages for the breach of the obligation, was bound to perform the contract or pay the damages.

The result of the cases reviewed, if their correctness be conceded, is to establish the following propositions of law:

(1) If the right of a railroad to occupy the streets of a town or city be dependent solely upon the action of such town or city, the latter may, in granting its consent, prescribe terms for the breach of which the right granted may be forfeited. (State v. Madison Street Railway, 72 Wis., 612.) The power that creates a corporate right may limit its enjoyment.

(2) When the law of the State grants permission to railroads to use the streets of towns and cities, but requires the assent of the authorities of such municipal corporation, if the town or city in giving such consent annexes thereto conditions which may operate upon breach thereof to forfeit the license granted, and if such terms are embodied in a separate contract signed by the railroad company, it will be enforced by the courts.

Railway v. Leavenworth, 1 Dillon C. C., 393; Indianola v. Railway, cited above.

(3)   When by the law of a State a railroad company is granted the privilege of constructing its road upon the streets of towns or cities with the assent of the authorities of such towns or cities the local authorities may, in connection with the consent given, prescribe terms requiring the railroad company to perform such work and do such things as may be necessary to preserve the streets as highways for public use; the things thus prescribed being within the powers granted to such municipal corporation by its charter.   Railway v. Mayor and C. C. of Baltimore, 21 Md., 93; Railway v. Lawrenceburg, 34 Ind., 304.

If we accept each and all of these propositions as correct they fail to sustain the clause of forfeiture which was embraced in the ordinance passed by the city of Galveston.

The case styled "Matter of Kings County Elevated Railroad Company," 105 N. Y., 97, involved the construction of a law very similar in many of its provisions to our own.   Under a statute of that State fifty householders and taxpayers were authorized to present an application to a Justice of the Supreme Court of the State stating that there was a necessity for a railroad in their county, whereupon it was the duty of the justice to appoint commissioners to examine into and make report of the existence of such necessity.   If the necessity was found to exist, the Supreme Court appointed commissioners to lay out the route, prepare a charter, and advertise for bids for the construction of the road.   The articles prepared by the commissioners constituted the charter of the corporation to which was awarded the contract for construction and operation.   To entitle the corporation to build the railroad upon any street or highway it was necessary to obtain the consent of the local authorities which had control of such street or highway.   All of the proceedings prescribed by law were regularly had in the case under review and the city authorities gave their consent with the following proviso: "Provided that the consent of the common council is hereby given upon the following conditions: Non-compliance on the part of the company with all or any of which shall render this consent void."

The railroad company constructed its road upon some of the streets but failed to comply with all of the conditions prescribed by the city, and afterwards attempted to condemn property abutting upon one of the streets, to which proceeding the defense was made that it had forfeited the consent of the city to use its streets by failing to comply with the conditions imposed by the ordinance.   The Court of Appeals states the question as presented by both parties thus:   "On the part of the appellant the claim is made that the consent embodied in the first resolution became at once valid and effectual, and fixed the municipal authorities of Brooklyn so effectually that the company must be deemed to have thereby met and satisfied the requirements of the Constitution and statute and the exaction of the articles of association, each of which requires the consent of the public authorities to the use of the streets and avenues

for railway purposes.   In effect their contention is that all the matters
set forth in the resolution of June 30, 1879, save that consent, was outside
the power of the common council, and therefore that the decision of the
special term, in which a contrary conclusion was reached, should have
been reversed.   On the other side it is insisted that a municipality whose
consent is necessary to the construction of a railway in the public streets
may impose such conditions as it thinks necessary in granting its con-
sent, and that the company to whom it is given cannot enjoy the benefit
while it rejects the conditions."

Upon the question thus stated, the Court of Appeals announced its
conclusion in this language:  "But neither the company when organ-
ized, nor the common council, could add to, or take away from the terms
or the conditions before provided and imposed by the commissioners.
The company by its formation accepted them; the common council need
not consent, but if they did, the company, so far as the city was concerned,
could proceed with the undertaking according to the charter, which the
State through its agents, the commissioners, had prepared for them."
In other words, the court held that the conditions attached being beyond
the power of the council to prescribe were void, and that the right of oc-
cupancy given by law with the consent of the council became effective in
favor of the railroad company.   It was not the act of making a contract,
but the exercise of a right given by law when the railroad company by the
consent of the city entered upon the streets and constructed its track.

People ex rel. W. S. St. R. R. Co. v. Barnard, 110 N. Y., 548, involved
the authority of a city over a street railroad and under an entirely differ-
ent law.   The court said:  "Under this act and under the constitutional
provisions applicable to the construction of street railways the municipal
authorities have the absolute power to grant or withhold their consent
to the construction of street railways; and they may impose any condi-
tions, however onerous and difficult to perform, which seem to them, in
the exercise of their discretion, to be proper, as the terms upon which
their consent will be given."   The authority of the city, of course, would
be different under different provisions of the statute, as illustrated in the
two cases above cited from the State of New York.

In "The Appeal of the City of Pittsburg," 115 Pa. St., 4, the validity
of conditions attached by the city of Pittsburg to its consent for a gas
company to use its streets was involved.   The statute of that State which
controls the subject under investigation was quoted by the court as fol-
lows:  "Any and all corporations, that is or are now or shall hereafter
be engaged in such business, shall have the right of eminent domain for
the laying of pipe lines for the transportation and distribution of natural
gas, including the right to appropriate land upon or under which to lay
said lines, and locate pipes upon and over, under and across any land,
rivers, streams, bridges, roads, streets, lanes, alleys or other public high-
ways, or other pipe lines, or to cross railroads or canals,  *  *  *  *
the right to enter upon any public lane, street, alley or highway for the
purpose of laying down pipes, altering, inspecting or repairing same,  *

* * subject to such regulations as the council of any city may by ordinance adopt, * * * declaring that companies of the class to which appellees belong shall not enter upon or lay down their pipes or conduits on any street or highway in any borough or city * * * without the assent of the councils of such borough or city by ordinance duly passed and approved." The city of Pittsburg claimed that it had the right to affix to its consent any limitation or conditions that it might see fit, but the court in that case said: "So far as the limited authority to legislate on these peculiar subjects has been delegated to councils, and to that extent only, can the corporate powers, rights and privileges of natural gas companies be qualified or limited. Councils are authorized to give or withhold their assent, without more. They have no right to couple their assent with any condition or restriction not imposed by the act, unless the company agrees to accept the same and be bound thereby; and even then the conditions or restrictions, so accepted by the company, must harmonize and in nowise conflict with the provisions of the act. The assent of councils being given, the regulations they are authorized to adopt are such only as relate to the manner of laying pipes, altering, inspecting and repairing the same, and the character thereof with respect to safety and public convenience. These regulations must also be reasonable and not in conflict with any of the provisions of the act. In all other respects, the powers of such companies are clearly defined and their duties and liabilities prescribed by the act under which they are incorporated. In view of the limited authority delegated to councils, it is a grave mistake to assume, as they appear to have done in this case, that they have the power to legislate on any and every thing directly or indirectly connected with the general subject."

The law of Pennsylvania, as above quoted, is very similar to that of this State, and we could not do better than to adopt the language of that court as before quoted to express our views of the powers of the city council when called upon to give or refuse its consent to a railroad company to occupy its streets. The cases cited from New York and Pennsylvania are both directly in point upon the question before us. In each one the doctrine is announced clearly and distinctly that the council of a city under such circumstances has the power to say no to such an application, but when it says yes, the right of occupancy which the State grants attaches notwithstanding the affirmative answer may be limited by conditions superadded by the city council.

In order to sustain the claim that the city of Galveston had the right to couple with its consent for the railroad company to use its streets any conditions or terms that it might deem proper, we must invest that municipal corporation with such legislative authority over the subject as would make its action the source from which the railroad company derives its right to build on the streets or we must conclude that the city had as full power to contract as a private person has, and that the ordinance in question constituted a contract between it and the railroad com-

pany. Neither of these propositions is true as applied to the facts of this case.

The scope of municipal power is well defined by the decision of this court to be only such as are conferred upon a city or town by its charter, either expressly stated or implied as being necessary to the exercise of some power expressed. Bossburg v. McCrary, 77 Texas, 572; Taylor v. Dunn, 80 Texas, 670.

The right of plaintiff to recover in the case of Taylor v. Dunn, depended upon the decision of a question quite like the one under consideration. The facts were briefly as follows: Abner Taylor and associates entered into a contract to build the capitol of the State and, for the purpose of transporting material to the site on which the building was to be erected, sought permission from the city of Austin to construct and operate a railroad upon certain streets in that city. There was no law at the time giving permission to construct such a railroad upon the streets of any city in the State, either with or without consent of the city. The city council of Austin granted permission to Taylor and associates to build and operate the railroad on the streets designated, prescribing certain terms to be complied with in the use of the streets, among which was the following:

"Sec. 4. Said contractors, Abner Taylor and his associates, shall be liable and responsible to any and all persons for any damage or injury that may result to him or their property from the construction, use, and maintaining of said railway."

The city council also required Taylor and associates to execute a bond to the city binding them to comply with the terms prescribed in the ordinance, which bond was given as required.

Gus Wilke took the contract from Taylor and associates to erect the capitol building, upon such terms as made Wilke an independent contractor, so that Taylor and associates were not liable for his negligence, or that of his employes, unless they were made liable by the terms of the ordinance and contract entered into with the city. In the course of the work the employes of Wilke who were engaged in managing the railroad constructed upon the streets of the city, were guilty of negligence, which caused an injury to the plaintiff, for which she sued Abner Taylor upon the ordinance and bond, claiming that they constituted a contract entered into with the city of Austin, for the use and benefit of such persons as might receive injury in the course of operating the said railroad. This court, speaking through Chief Justice Stayton, said: "That section of the ordinance was evidently inserted for the purpose of avoiding all controversy as to the primary liability of appellant for such injuries as might result from the construction and maintenance of the railway, and not for the purpose of conferring on individuals causes of action against appellant which they would not otherwise have. So limited, it ought to be held that, as between appellant and the city, that section of the ordinance became a contract upon the acceptance of the rights conferred by the ordinance, to which the city might look, and

which it might enforce in any case in which it as well as appellant might
be liable on account of his acts or omissions. So far the city would
evidently have power to contract, but it is difficult to find any provi-
sions in its charter which would give plausibility to a claim that it had
power to make a contract solely for the purpose of conferring on indi-
viduals a cause of action they would not otherwise have. It was only
empowered to make such contracts as relate to the municipality, and
are necessary to enable it to exercise the powers conferred by its char-
ter or some general law."

The opinion in that case asserts the same doctrine as that laid down
by the Supreme Court of Pennsylvania in The Appeal of The City of
Pittsburg. Both cases rest upon the sound proposition that a city may
annex to its consent for the use of its streets terms or conditions which
require the performance by a railroad company of those things which are
within the power of the municipal corporation to regulate and enforce
against a corporation or individual occupying such streets with the
city's consent, and that no other terms can be prescribed by the city
under such circumstances. In the language of the Supreme Court of
Pennsylvania, in the case last cited, "in view of the limited authority
delegated to councils, it is a grave mistake to assume, as they appear
to have done in this case, that they have the power to legislate on any
and everything directly or indirectly connected with the general sub-
ject." A city council having control over its streets by virtue of its
charter, when called upon to give consent for a railroad company to
build upon its streets, may prescribe terms which embrace the doing of
all those things necessary to the preservation of the street and cross-
ings for public use; however, this is not done by virtue of a power aris-
ing out of the right to deny consent to use the street, but is the exer-
cise of a power conferred by its charter, which power might be as well
exercised after the consent is given as at that time. In other words, if
a city had given consent to a railroad company to occupy its streets
without prescribing terms or conditions, it might thereafter, in regu-
lating the use of such streets, require the same things to be done that it
could have required at the time that its consent was given

The time within which the railroad should be constructed to any
given point, especially beyond the limits of the city of Galveston, was a
subject entirely beyond the jurisdiction of the council of that city, and
the provision in section 10 of the ordinance, requiring the railroad to be
constructed across Galveston Bay within five years, is not sustained by
any power contained in its charter either express or implied.

It is not denied that the State might have granted to railroad com-
panies the right to occupy the streets and highways without any condi-
tion, therefore the superior authority over this subject rests with the
State Legislature. The Legislature did, in clear and unambiguous terms,
grant to railroad companies the right to occupy the streets of towns or
cities, upon a condition that the consent of such city or town should
be first obtained. When the city of Galveston gave its consent for the

railroad company to construct its road over the streets of the city, the condition precedent prescribed by the Legislature was fulfilled, and the statutory right attached in favor of the railroad company. Applying the law of the State to the facts of the case, no cause of forfeiture exists, and the railroad company has acquired a right to use and occupy the streets of the city of Galveston, in accordance with the laws of the State. But, to the condition precedent prescribed by the statute, the city of Galveston has attached a condition subsequent, the breach of which, it is claimed, has the effect to annul not only the consent of the city, but also to set aside and annul the right acquired under the laws of the State. In this case the railroad company was in possession of the streets of the city of Galveston under a grant by the State upon a condition precedent, which had been fulfilled; to which the city answered that, although this is true, the ordinance of the city prescribed a condition the breach of which destroyed the right of occupancy under the statute. This cannot be true unless the ordinance of the city is superior to the statute, and the creature may become greater than the creator.

It has been the policy of this State to encourage the construction of railroads, and the making of investments in them. Large donations of land have been made to aid in the construction of such highways to furnish the people facilities for transporting the products of the country to market. In order to render secure investments made in such property in this State, both in the stock of railroad companies or in bonds secured on such railroads, the law has provided that, in case of forfeiture of the charter for failure to construct any part of a railroad, the forfeiture should apply only to the uncompleted portion of the road. In no case, under the laws of this State, do we believe the property of a railroad company is held to be forfeited and lost by any failure to comply with the requirements of the law. If the charter be forfeited under the laws of the State, the property remains to pay the debts of the corporation, the surplus, if any, to be distributed among the stockholders; but under the condition prescribed by the city of Galveston, all of that portion of the track between 37th street and the west line of the city, as well as that part from 37th street to 43rd street into Avenue A or Post-Office street, is to be absolutely destroyed under the judgment of the court as it was rendered. The investment made by the stockholders, and all bonds issued upon the railroad, are to that extent rendered worthless.

It is said that the judgment of the District Court does not forfeit the charter of the company. This is true, but the result is more disastrous to the stockholders of the company than if the charter had been forfeited. If the charter were forfeited the stockholders and bondholders could have the property sold, and the proceeds properly applied. The property itself being destroyed, the charter is practically valueless.

If the doctrine contended for in this case be established, then in the future, should any town or city prescribe like conditions as those pre-

scribed in this case, the result would·not be improbable and altogether possible that, upon a forfeiture accruing inside of the city limits, and a removal of the track of the railroad, a great public highway would be thus cut into two parts and rendered practically valueless for the purposes for which it was constructed. We would have the anomalous condition of a right once fully vested and valid by the law of the State, divested by virtue of the ordinance of a town.

Can it be doubted that an ordinance of a city which produces such results is in direct antagonism to the laws and public policy of this State? We think not, and for this reason, as well as for reasons given before, we hold that the condition prescribed in the 10th section of the ordinance of the city of Galveston, adopted on the 8th of March, 1889, was void, and furnished no ground upon which the court could enter the judgment requiring the removal of the defendant's property from the streets of that city.

It is ordered that the judgment of the District Court and Court of Civil Appeals be reversed, and that the cause be dismissed, and that plaintiff in error recover of the defendant in error all costs in all the courts.

*Reversed and dismissed.*