## ATHENS TELEPHONE CO. v. CITY OF ATHENS. (No. 7387.)

(Court of Civil Appeals of Texas. Dallas. Dec. 11, 1915. Rehearing Denied Jan. 22, 1916.)

1. TELEGRAPHS AND TELEPHONES ☞33 — FRANCHISE — MAXIMUM RATE — WHEN ENFORCEABLE.

Where the operators of a local telephone system in an unincorporated town sought a franchise from the town after its incorporation under the general laws, and it being agreed that the charge for telephones should not be over $1.50 per month, as it had been previously, a franchise was granted in which such maximum charge was provided for, the charge could not thereafter be raised above such maximum, on the ground that a town incorporated under the general laws has no power to fix telephone rates, since a telephone company, voluntarily accepting a rate imposed by a franchise granted without authority, cannot thereafter contest its reasonableness or refuse to furnish service at such rate.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. ☞33.]

2. TELEGRAPHS AND TELEPHONES ☞10—PUBLIC WAYS—USER.

Under Rev. St. 1911, art. 1231, authorizing telegraph companies to utilize public ways, the right of telegraph and telephone companies to enter and pass over streets and alleys of municipalities of the state for the purpose of transmitting telegrams and long-distance telephone messages is absolute, except for the limitation of article 1235 that municipalities may reasonably regulate such use.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. ☞10.]

3. TELEGRAPHS AND TELEPHONES ☞33 — FRANCHISE FIXING RATE — SEPARATE CONTRACT.

The fixing of a telephone rate in a franchise granted to a local company by a municipality is not inoperative, because not evidenced by a separate contract signed by the company, since a local telephone company has no absolute right conferred by law to erect and operate its system in municipalities, to which a rate condition could not be lawfully annexed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. ☞33.]

4. TELEGRAPHS AND TELEPHONES ☞33—PURCHASE OF LOCAL SYSTEM BY CORPORATION—FRANCHISE—MAXIMUM RATE—INCREASE.

Where the owners of a local telephone system in an unincorporated town legally obligated themselves to a maximum rate by agreeing thereon as a basis for the grant of a franchise by the town after its incorporation under the general laws, defendant telephone company, incorporated to construct, maintain and operate telephone lines, local, rural, and toll, which took over the system in payment for four-fifths of its capital, could not increase such maximum rate, since its authority to operate being derived solely from the municipal grant to such first owners, it

was bound by the maximum rate therein provided.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. ☞33.]

. Appeal from District Court, Henderson County; F. L. Hawkins, Judge.

Action by the City of Athens against the Athens Telephone Company. From a permanent injunction against collecting a telephone rental of more than $1.50 per month from the citizens of Athens, defendant appeals. Affirmed.

Marsh & McIlwaine, of Tyler, Miller & Miller, of Athens, and S. A. Lindsey, of Tyler, for appellant. W. R. Bishop and Earnest A. Landman, both of Athens, for appellee.

RASBURY, J. This proceeding was heretofore before us on an appeal from an order of the district judge granting in vacation a temporary injunction restraining appellant from collecting from its patrons more than $1.50 per month for the use of telephones in places of business in the town of Athens and requiring appellant to furnish telephones for all persons tendering such sum of money in payment therefor. The preliminary action of the trial court in the respect stated was sustained. Athens Telephone Co. v. City of Athens, 163 S. W. 371. Since the proceeding detailed the case has been submitted to the trial judge, without the intervention of a jury, upon full hearing, at which hearing appellant was perpetually enjoined from collecting from the citizens of Athens a telephone rental of more than $1.50 per month and required to furnish such phones at such rental for a period of 50 years from June 10, 1901. From such final order appellant has appealed to this court, seeking reversal and rendition of the judgment.

[1] Upon request of appellant the trial judge filed conclusions of fact and law. The facts so found, which are unchallenged, essential to a disposition of this appeal, are partially in our own language in substance as follows: In the year 1898 John T. Garrett and W. H. Truett, partners under the firm name of Garrett & Truett, with the consent of the citizens of Athens, then unincorporated, constructed in the town of Athens a telephone exchange, using the streets, alleys, and highways for their poles, wires, etc., charging for the use of telephones in business houses and residences a rental of $1.50 per month. The town was incorporated in the year 1901, and soon thereafter Garrett & Truett applied to the town for a franchise permitting them to conduct their telephone business therein. Terms were agreed upon, and an ordinance embodying the agreement was enacted, whereby Garrett & Truett were permitted to conduct a telephone business in Athens for a term of 50 years from June 10, 1901, which, among other things, stipulated that, in con-

sideration of the grant, Garrett & Truett should not charge more than $1.50 per month per telephone for both residence and business telephones. Garrett & Truett, after the enactment of the ordinance, continued to use the streets, alleys, and highways of Athens, and continued to charge the sum of $1.50 per month for telephones. Prior to October, 1904, Charles Garrett acquired the interest of John T. Garrett in said telephone business, and Can Willis in turn acquired that interest from Charles Garrett. On October 1, 1904, Willis and Truett, by instrument in writing, transferred the business to C. H. and Dick Connally, describing same as:

"The Athens Telephone Exchange situated and carried on in the town of Athens, * * * including all phones now in use or not in use, wires, cables, switchboards, poles, franchise, and all other appurtenances and rights belonging to or constituting part of the said Athens Telephone Exchange."

The Connallys operated the telephone exchange after acquiring it under the provisions of the grant to Garrett & Truett so far as rates were concerned. In January, 1905, the Connallys sold the exchange to J. F. Moore, and in their conveyance described same as:

"The Athens Telephone Exchange, * * * in the town of Athens and adjacent thereto, including all wires, poles, switchboards, cables, and franchise from the town of Athens," etc.

While he owned same Moore operated the exchange under the terms of the grant to Garrett & Truett, complying with the rate charged therein. In March, 1905, Moore sold the exchange to J. A. Jones, describing it as:

"The Athens Telephone Exchange, * * * in the city of Athens and country adjacent thereto, * * * including all phones, wires, poles, switchboards, cables, transmitters, and receivers, and all other apparatus, fixtures, tools, instruments, and appliances, and the franchise from the city of Athens, * * * together with all the rights, privileges, and franchise of every kind and nature used in connection with or appurtenant to the said telephone exchange system and plant."

Jones operated the exchange under the terms of the Garrett & Truett grant, complying with the rate fixed thereby. Subsequent to the time he acquired the business, and on May 25, 1911, Jones, associating himself with J. W. Murchison, E. A. Carroll, T. H. Barron, S. M. Cain, E. Henderson, and Paul Jones, prepared, executed, and acknowledged articles of incorporation for the purpose of securing from the state a charter authorizing them, under the name of the Athens Telephone Company, Incorporated, to construct, maintain, and operate telephone lines, local, rural, and toll, in Athens and the county of Henderson, with its principal office in Athens, with a capital stock of $25,000, divided into 1,000 shares, of the par value of $25 each. Those named as incorporators constituted the board of directors for the first year. In compliance with the statutes in reference to the chartering of private corporations, the affidavit of Jones, Murchison, and Carroll

was appended to the articles of incorporation, wherein it was deposed that the full amount of the capital stock of the proposed corporation had in good faith been subscribed and paid in, $20,000 of which represented the price the proposed corporation, the Athens Telephone Company, Incorporated, had agreed to pay Jones for "the property, property rights, franchises, easements, privileges, and business of the Athens Telephone Company, unincorporated, owned by him, * * * located in Athens, * * *" and consisting of "a local telephone exchange in the city of Athens and various rural and toll lines extending into the county," etc. The articles of incorporation were approved and the concern duly chartered by the state May 27, 1911. After the incorporation of the Athens Telephone Company it operated in Athens, using the streets, alleys, and highways of said city for its poles, wires, and other telephone business by authority of the grant to Garrett & Truett, and under no other grant or permit from the city of Athens, and complied with the rate stipulated in the said grant until a short time before the institution of this suit, when the rate for business telephones was advanced to $2.50 per month, to enjoin which this suit was instituted.

Upon the facts as stated the trial judge perpetuated the former temporary injunction. We will not undertake to discuss appellant's assignments of error seriatim, since, due to the action of the trial court on certain special exceptions, the issues are repeated in the brief, but in lieu thereof will discuss the issues as such.

It is urged that the judgment is erroneous, for the reason that, the Legislature not having delegated to cities incorporated under the general laws of the state the power to fix rates to be charged by telephone companies, appellee was without authority to fix the rate to be charged by Garrett & Truett either by contract or ordinance. For the purpose of the discussion, but without determining that issue, the premises of the proposition may be conceded; that is, that appellee city, being incorporated under the general laws, was without authority to fix rates to be charged by appellant, as may also the resulting corollary that a refusal to agree upon rates would be insufficient as a basis for denying the use of its streets at least to a distance telephone company. Nevertheless it cannot be said that either rule is conclusive of the issue as presented by the facts in the instant case. The trial court found, and it is not denied, that Garrett & Truett voluntarily agreed that the rate fixed by their agreement with the citizens of Athens should be embodied in the grant by appellee, after its incorporation under the general laws of the state. An accepted authority asserts the general rule to be that the right to fix rates for the transmission of telegraph and telephone messages is inherently in the Legislature, but that such

authority may be delegated to state boards, etc., or municipalities, though it will not be recognized as reposing in the latter bodies, unless very clearly delegated, yet that—

"a municipality may, * * * in granting rights and privileges to such a company, annex thereto a condition as to the rates to be charged, and although the municipality may not have the power to impose such a condition upon the company against its consent, yet if the company voluntarily accepts the rights granted with the condition annexed, it cannot afterwards contest the reasonableness of such rate, or refuse to furnish services or facilities at the rate stipulated, or deny the authority of the municipality to make such agreement." 37 Cyc. 1630.

Many cases from many jurisdictions are cited in support of the rule so clearly announced.

[2] It should be borne in mind, in connection with what we have just said, that the judgment of the lower court only affects appellant's business in the conduct of its local exchange, and that the agreement with reference to rates as embodied in the grant to Garrett & Truett involves only those to be charged for the use of telephones in the city of Athens, and that the transmission of distance messages and the right to enter upon the streets of appellee for that purpose is not involved. By repeated constructions of article 1231, R. S. 1911, our appellate courts have held that the right of telegraph and telephone companies to enter and pass over the streets, alleys, etc., of cities, towns, and villages of the state for the purpose of transmitting telegrams and distance telephone messages is absolute, save for the limitations contained in article 1235, R. S. 1911, which confers upon such municipalities the right to reasonably regulate the use of their streets, etc., so that the public will not be incommoded by the wires and poles of such companies. We said as much on the former appeal, basing our holding on the case of City of Brownwood v. Brown Tel. & Tel. Co. (Sup.) 157 S. W. 1163. Our former holding was before the Supreme Court on application for writ of error and was approved. That court being one of last resort, so far as we are concerned, finally settles the question.

[3] But it is further urged, in connection with what we have just said and notwithstanding the rule cited, Garrett & Truett were not bound by the grant fixing the rate of rentals, because the agreement was not evidenced by independent or collateral agreement in that respect. This contention is based upon the rule announced in Galveston & Western Ry. Co. v. Galveston, 90 Tex. 398, 39 S. W. 96, 36 L. R. A. 33. In that case it was, in effect, among other things, said that, when by the law of the state a given business was permitted to use the streets of towns and cities, there could not lawfully be annexed to such right by the municipalities conditions which might, upon breach, operate to forfeit the grant, unless evidenced by sepa-

rate or independent contract signed by the railway, and, we presume, upon consideration other than the mere right to go upon the streets as provided by law. The difference between the case cited and the one at bar is that the Galveston & Western Railway Company had the right by state law, as have distance telephone companies, to go upon the streets of the city of Galveston, while local telephone companies, such as appellant, do not possess that absolute right. It may be said in passing that it was held in the same case that "if the right of a railroad," and by analogy a local telephone business, "to occupy the streets of a town or city be dependent solely upon the action of such town or city, the latter may, in granting its consent, prescribe terms for the breach of which the right granted may be forfeited."

[4] It is next urged that, appellant having been enfranchised by the state for the purpose of operating a telephone line, and having as a consequence the right by law to use appellee's streets for that purpose without its permission, and having the right to purchase the telephone line from Jones, it was not bound by Garrett & Truett's agreement with reference to rates, since it did not so agree with appellee or any one else. We concede, of course, as we have at another place in this opinion, the right of appellant in respect to distance telephone business, as also its implied right under its charter to purchase as well as construct telephone lines, etc. We do not concede, however, its right to enter at will upon the streets and alleys of Athens for the purpose of transacting a local telephone exchange, nor do we concede that it is not, under the findings of the trial judge, bound by the Garrett & Truett grant. We think it clear that it is. The reasons why we do not think appellant entitled to conduct a local exchange without the consent of appellee are stated at another place in this opinion and in our former opinion in this case. The reason why we conclude it is bound upon the Garrett & Truett contract in respect to rates for local telephones is because it is transacting its business solely under authority of the grant to Garrett & Truett and receiving the benefits of such grant, as shown by the unchallenged findings of the trial judge, as well as its articles of incorporation. The affidavit to the articles of incorporation discloses that the Athens Telephone Company, unincorporated, sold to the Athens Telephone Company, Incorporated (appellant), all its property and franchises, consisting of a local telephone exchange in Athens and various rural and toll lines extending into the country. The property so taken over from the unincorporated company by the incorporated company was taken over at the valuation of $20,000, and made up to that extent the authorized capital stock of the incorporated company. Further, it was taken over from Jones (who received stock in that

amount from the incorporated company in payment thereof), whose "franchise and rights," by an unbroken line of transfers from his predecessors in ownership and title, were admittedly the grant by appellee to Garrett & Truett. No claim of any character is made that the appellant is operating under any other authority, nor could such claim consistently be made. Holding, as we do, that local telephone exchanges have not been granted the absolute right by the state to enter upon the streets of cities or towns, it follows that appellant, in conducting its local exchange in Athens, is doing so solely by authority of the grant to Garrett & Truett, since that was the only authority possessed by Jones, from whom appellant purchased the business, and from which it follows that appellant is in all respects bound by the terms of the Garrett & Truett grant.

Finding no reversible error in the judgment, it is affirmed.