THE G. C. R'y Co. v. THE G. C. S. R'y Co.

(Case No. 2006.)

1. INCORPORATION.— A street railway company cannot be incorporated by special act of the legislature, and the legislature cannot by general law confer on a street railway corporation the right to establish its road-bed on any street without the consent of the local municipal authorities. Const., art. 3, sec. 56; Const., art. 10, sec. 7.

2. STREET RAILWAYS — FORFEITURE.— The consent by a city council that a street railway company may occupy a street with its road is not a grant in the nature, and having the elements and consequences, of a contract, and which can only be forfeited by judicial procedure. It is but a license, which may be withdrawn at any time before it is acted on by the company. If, under such license, a road be built, and be afterwards abandoned, the right to occupy may be conferred by the city on another company without first procuring a judicial decree of forfeiture against the company that first procured the license.

3. RIGHT OF STREET RAILWAYS TO ENGAGE IN THE BUSINESS OF BUYING AND SELLING LAND.— No opinion expressed as to the effect of a clause in the charter of a street railroad company authorizing it to engage in the purchase and sale of land.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

April 9, 1884, appellee brought this suit to recover damages, and for injunction to restrain defendant from interfering with appellee in constructing street railroads over certain streets and avenues in the city of Galveston, alleging that plaintiff was duly incorporated in accordance with the general laws of the state of Texas; that it had secured the consent of the city council to construct its lines on certain streets named; that appellant wrongfully, and without the consent of the city council, also commenced work upon the same streets, and operated in such way as to interfere with and to prevent appellee from prosecuting the work; and also wrongfully caused collisions between its laborers and those of the appellee.

Appellant answered that it was duly incorporated by virtue of the special act of the legislature passed in 1866, and amended in 1871; that, as such corporation, it had the exclusive right to the streets of Galveston, for the purpose of constructing and operating street railways thereon. That the city council had granted the right to construct and maintain street railways on all the streets to which appellee asserted that right to the People's Railway Company, which had been duly incorporated under the general laws of the state; and which company had been, by and with the consent of

VOL. LXIII—34

the city council, bought out by appellant in 1879, and that thereby appellant secured its franchise, rights and property.

The cause was tried without a jury, and the court, as to certain streets named, perpetually enjoined appellant from in any manner interfering with appellee, etc.

Appellant's assignments of error were numerous and lengthy.

Appellee was incorporated in 1883, and amended articles were filed in the secretary of state's office March 24, 1884.

The articles of incorporation of the People's Railway Company were filed December 10, 1873.

It appeared from the evidence that, with one or two exceptions, the streets upon which appellee claimed the right to construct and maintain its lines were never occupied by any other street railway, and that, in reference to the exceptions, the road-bed had been removed and the streets abandoned for about four years before the city council gave appellee consent to use the same.

*Scott & Levi*, for appellant, contended that the permission given by the city to construct and operate the road was a contract that could not be disregarded or divested except by due course of law, citing: Const., U. S., art. 1, sec. 10, amendment 14; Const., State Bill of Rights, sec. 19; 24 Tex., 122, 125; People's R. R. v. Memphis R. R., 10 Wall., 52 *et seq.;* Cooley's Const. Lim., 339; Hiss v. Balt., etc., R. R. Co., 62 Md., 262; S. C., 4 Am. and Eng. R'y Dec., 201, 210; Morawetz on Corp., secs. 422, 423, 424, 431, 432; Canal Co. v. R. R. Co., 4 G. & J., p. 146.

That the city could not grant such a franchise, they cited: Galveston City Charter, 1876, secs. 34, 73, 74; Const. of Texas, 1876, art. 10, sec. 7; art. 12, secs. 3, 7; Dillon on Mun. Corp., secs. 55, 566; People's R. R. v. Memphis R. R., 10 Wall., 50, 52.

*Hume & Shepard* and *James B. Stubbs,* for appellee, that the city, in giving permission to construct a road, gave but a license which might be converted into a franchise by the state, and lost by a failure to build or maintain as required by the city, cited: City Charter, secs. 34, 73, 74, 81; Const., art. 10, sec. 7; Dillon, Mun. Corp., sec. 563; Citizens' Gaslight Co. v. Louisville Gas Co., S. C. Ky., June 16, 1883; 1 Am. & Eng. Corp. Cases, 156.

As to the power to charter except by special law, they cited: Tunstall v. Wormley, 54 Tex., 476; Tex. & Miss. R. C. and Nav. Co. v. County Court of Galveston, 45 Tex., 272; Boone on Corporations, sec. 21; Morawetz's Private Corporations, sec. 7; 5 Wait's Act. and Defenses, 273-4.

WATTS, J. COM. APP.— There is but one way in which a street railway company can be incorporated under the present constitution, and that is by virtue of and in accordance with the general statutes of the state.   These companies cannot now be incorporated by special act of the legislature.   Const., art. 3, sec. 56; R. S., art. 566, clause 24.

And the right of such company to occupy with its road-bed any particular street is wholly dependent upon the consent of the local authorities who have control of the same.   Without the consent of the local authorities having first been obtained, it is not within the power of the legislature to confer such right.   Const., art. 10, sec. 7.

Appellant claims that appellee is not a legal corporation, with capacity to construct street railways in the city of Galveston, because there is no express provision contained in the city charter which would authorize the council to grant the right of way over the streets, and without such right of way there could be no franchise.

In this two distinct and different elements pertaining to this class of corporations are confounded, and from the confusion an erroneous conclusion is deduced.

Now the right to organize as an artificial person under a particular name, to have succession, maintain and defend judicial proceedings, to use a common seal, and to conduct the business for which it was created, constitutes the franchise or chartered rights of the company, and these must emanate from express legislative enactment.   1 Dillon on Municipal Corporations, sec. 37; Angell & Ames on Corporations, sec. 71.

But the right to occupy any particular street with its road-bed is entirely dependent upon the consent of the city authorities.   To that end these local authorities have full control and management of the streets, and may or not consent to their use for such purpose.   Const., art. 10, sec. 7; R. S., art. 4173; Indianola v. G., W. T. & P. R'y, 56 Tex., 599.

It clearly appears that appellee had filed the articles of incorporation in accordance with the statute, and had also procured the consent of the city authorities for the occupancy of certain of the streets and avenues with its road-bed; so that the objection to the capacity of appellee to maintain the proceeding is not sustained by the record.

However, admitting that appellee was properly incorporated, and had procured the formal consent of the city authorities to the occupancy of the named streets, yet it is claimed that inasmuch as these

authorities had previously granted consent to the People's Railway Company to the occupancy of some of these streets, and that appellant had, by and with the consent of the city authorities, succeeded to all the rights of the People's Railway Company, by purchase and consolidation, that it was not within the power of the city council to authorize the appellee to occupy these streets with its road-bed.

That proposition is predicated upon the assumption that the giving of the consent by the city council, for the occupancy of the streets with the road-bed, is an irrevocable grant in the nature of a contract, which subsists forever, unless declared forfeited by proper judicial proceedings.

But that assumption has no foundation in law or fact. The consent of the city council is nothing more than a license extended to the company, so as to secure facilities for the accommodation and convenience of the citizens. At least, until the company has availed itself of the license, the city council may at any time withdraw its consent, and confer the privilege upon another.

Undoubtedly the object in conferring power and authority upon the city council over the streets and avenues was to have them so used as to accommodate the citizens and public. But it was not contemplated that the council should have the power to place the control and management of the streets and avenues in such condition as that they could not be made to subserve the original purpose intended.

From the record it does not appear that the appellant, either in its own right or in the right of the People's Railway Company, has ever secured any irrevocable grant to or right in any of the streets, awarded to appellee by the court below. It had at one time secured the consent of the city authorities to construct a line of road upon some of these streets, and it appears that it had at one time a road in operation upon one of these, but had long since abandoned the street and removed the road-bed. As to the other streets involved in the contest, appellant had failed to avail itself of the consent of the council, and had not occupied these streets.

In removing the road-bed, and failing to construct another, appellant left the street subject to the occupancy of any other company that could secure the consent of the city council. And when appellee secured that consent, it was equivalent to a revocation of the license previously given to the appellant. To enable the council to withdraw its consent, and especially before any action had been taken ppellant, or when, after constructing the road, it had been red and the street abandoned, it was not necessary that the

council should procure a judicial declaration of forfeiture. But under such circumstances the council had the power to withdraw its consent, and by conferring the license upon appellee to occupy these streets with its road-bed, the council will be presumed to have done so. City of Detroit v. Detroit City R'y Co., 37 Mich., 558; Street R'y Co. v. West Side R'y Co., 7 Am. & Eng. R. R. Cases, 95; New York & Harlem R'y Co. v. Railway Co., 50 Barb., 285; Market St. R'y Co. v. Central R'y Co., 51 Cal., 586.

From these conclusions the result is inevitable, that the appellee has the right to occupy the streets with its road-bed, etc., the right to occupy which was awarded by the court below.

Having considered the remaining question presented, the conclusion is reached that there is no such error in the judgment of which appellant can complain as would authorize a reversal, and that therefore the judgment ought to be affirmed.

That no misapprehension should arise, it should be remarked that it is not necessary in the disposition of this appeal to decide whether or not, under the constitution, appellant could by purchase and consolidation secure the property, franchise and rights of the People's Railway Company. In the articles of incorporation filed in the office of secretary of state, it is stated that the purposes for which the corporation is formed are to build, construct, maintain and operate street railways, etc. "Also to engage in the business of buying and selling real estate in said city of Galveston." There was no question made as to the legality of the latter clause of the charter, or its effect upon the charter itself, hence no decision upon these points is necessary.

However the writer does not deem it amiss to remark that he entertains grave doubts as to the power of the legislature to confer upon corporations, either by general laws or special acts, the right to become speculators in real estate by purchasing, owning and selling lands generally.

AFFIRMED.

[Opinion adopted March 20, 1885.]