THE ATCHISON STREET RAILWAY COMPANY V. ABRAM
NAVE, et al.

1. NUISANCE — *Joinder of Plaintiffs.* Two or more persons, each own-
   ing distinct though adjoining lots and buildings on the street of a
   city where it is proposed to build a street railroad without authority
   from the city, which when built will obstruct the use of the properties
   and cause a common injury to such proprietors independent and
   different from what the general public suffers, may unite as plaint-
   iffs and maintain an action to restrain the threatened obstruction
   and nuisance. (*Palmer v. Waddell,* 22 Kas. 352.)

2. STREET RAILWAY COMPANY; *Privilege; Limited Time.* Where a city
   authorizes a street railway company to occupy a certain street and
   construct a railroad thereon at any time within six months after the
   authority is granted, the privilege so given must be used, if at all,
   before the expiration of the time limited.

3. OCCUPYING STREET — *License — Termination and Renewal.* The per-
   mission conferred by the city authorities is a mere license, and if it
   is not availed of by the company within the time stated in the or-
   dinance, no act of revocation or declaration of forfeiture is required
   to terminate the same; and the railway company or licensee cannot
   thereafter construct or operate the road without a renewal of the
   license.

*Error from Atchison District Court.*

Abram Nave, James McCord and G. L. Moulton brought
an action against *The Atchison Street Railway Company,* to
enjoin the construction of a street railroad along Second street
in the city of Atchison, alleging that the plaintiffs had con-
structed large buildings on that street to be used as wholesale
houses and which were adapted to that purpose, and that the
construction of the railroad in the manner threatened would
necessarily obstruct and destroy access to their property and
buildings, and would be of irreparable injury and damage to
them; and they further averred that they have the same in-
terest in the subject of the action.   The railway company de-
murred to the petition, alleging that there was a defect of
parties plaintiff, and that several causes of action were im-
properly joined; which demurrer was overruled, and excepted
to.   The answer of the railway company admitted the organ-

ization and existence of the city of Atchison and of the defendant railway corporation, as well as the allegation respecting the existence and location of Second street in Atchison. It further admitted that it claimed the right and was about to build and maintain a street railway on Second street, as alleged. The other facts stated in the petition were denied; and the defendant set up as a. third defense, that the plaintiffs had no mutual or joint interest in the prosecution of the action, and were improperly joined as plaintiffs therein. The reply of the plaintiffs denied all averments inconsistent with those stated in the petition. Afterward, upon stipulation of all the parties, John K. Landis was substituted as plaintiff instead of G. L. Moulton, it appearing that the property of Moulton had been transferred to Landis.

At the February Term, 1886, the case was tried by the court without a jury, and the following conclusions of fact and of law were found and stated:

"CONCLUSIONS OF FACT.

"1. All and each of the allegations contained in the first count of the plaintiffs' petition are true.

"2. All and each of the allegations contained in the second count of the plaintiffs' petition are true; but since the commencement of this action, and on July 1, 1884, the plaintiff G. L. Moulton sold and conveyed to John K. Landis the real property described in said petition as belonging to G. L. Moulton, and the said John K. Landis is substituted in his stead by agreement of the parties.

"3. Under the ordinance of said city the width of said Second street subject to use for sidewalks is 12 feet on each side thereof, but the actual width occupied on the east side of said street including the curbing is only 11½ feet, and it has never exceeded that width. There is a stone guttering outside of the curbstone, the depth of the guttering being about one foot from the top of the curbstone.

"4. The east end of the Atchison union depot is at Second street, extending north to Main street, and the next street north of Main street is Commercial street, block 19 being on the west side and block 20 being on the east side of Second street, between Main street and Commercial street, each block being

315 feet in length, the distance between the north side of Main street and the south side of Commercial street.

"5. On November 14, 1879, the mayor and councilmen of the said city of Atchison, then a city of the second class, passed an ordinance, which was duly approved on the same day and published on November 15, 1879, granting to the Atchison Union Depot and Railroad Company and the Missouri Pacific Railway Company the right to extend, construct and lay down a single railroad track from the Missouri Pacific Railway track on the south side of Main street to the north of Main street the distance of 175 feet on Second street, not to exceed 40 feet from the west side of said Second street, with power to said companies to operate the same, the said track to be used for no other purpose than mail, express and passenger trains; and it was provided in said ordinance that the track should be made to conform to the grade of the street, and that the street should be macadamized or planked by said companies a distance of 175 feet north of Main street so as to make said street fit for use, and that cars and engines should not be permitted to stand north of the south line of Main street at any time to exceed twenty minutes except for necessary laying-down or repair of tracks.

"6. Such companies duly proceeded to lay said single track on Second street across Main street and north thereof, the gauge of said track being four feet eight and one-half inches or five feet from outside to outside of the rails. At a point two or three feet north of the north line of Main street it is seventeen feet and seven inches from the curbing on the west side of Second street to the outside of the west rail, and from the outside of the east rail to the curbing on the east side of Second street the width is thirty-four feet seven inches. At a point thirty-eight feet further north it is twenty-two feet from the curbstone on the west side of Second street to the outside of the west rail, and from the outside of the east rail to the curbing on the east side of Second street the width is twenty-nine feet ten inches. At a point forty-eight feet four inches further north, and opposite the south wall of the Moulton building, it is twenty-four feet from the curbing on the west side of Second street to the outside of the west rail, and from the outside of the east rail to the curbstone on the east side of Second street the width is twenty-seven feet seven inches. At a point forty-eight feet further north to opposite the north side of the Moulton building, it is twenty-four feet from the curbstone on the west side of the street to the outside

of the west rail, and from the outside of the east rail to the curb-stone on the east side of said street the width is twenty-seven feet seven inches.   At a point twenty-four feet nine inches still further north, at the end of said track, which is opposite to the middle of the front of said Nave & McCord building, it is twenty-three feet and ten inches from the curbstone on the west side of said street to the outside of the west rail, and from the outside of the east rail to the curbstone on the east side of said street the width is twenty-seven feet and seven inches.

"7. On December 20, 1881, the mayor and councilmen of said city of Atchison passed, and on December 30, 1881, the mayor approved, and on December 31, 1881, there was duly published ordinance No. 415, granting to the Atchison Street Railway Company, a corporation, the right at any time within six months after the taking effect of said ordinance, to con-struct street-car tracks and operate cars thereon over, along and upon certain designated streets of the city of Atchison, commencing on Second street at or near the union depot, thence north on Second street to Commercial street, thence west on Commercial street to Eighth street, and on certain other streets of said city; but the tracks, side-tracks and switches not to be constructed nearer than fifteen feet of any sidewalk except upon and by permission of the council of said city of Atchison, the gauge to be four feet eight and one-half inches, or five feet from outside to outside of the rails, and the tracks not to be elevated above the surface of the streets, but so that vehicles might easily cross the same, and the cars shall be propelled by horse or mule power.   And it was further provided that upon the failure of said street railway company to construct the track over and along either of the routes mentioned in said ordinance, and operate cars thereon within six months from the time of the taking effect of said ordinance, the rights conferred thereby should cease and deter-mine unless such street railway company should by an action of law or judicial proceeding be interrupted in the construction of such track or tracks and the operation of cars thereon, or should be prevented by injunction or otherwise from con-structing such track or tracks and in operating cars thereon, in which case the time of such interruption or prevention should not be deemed or taken as any part of such period of six months.   On May 15, 1882, the mayor and councilmen of said city of Atchison passed, and on May 22, 1882, the mayor approved, and on May 23, 1882, there was duly pub-

lished ordinance No. 439, extending the time for the com-
pletion and operation of said street railway until six months
after the taking effect of said last-named ordinance, and pro-
vided if said street railway company should by an action of
law or judicial proceedings be interrupted or hindered in the
construction of said track or tracks, or in operating cars
thereon, the time during which such hindrance or interrup-
tion continued should not be deemed any part of said period of
six months.

"8. Said street railway company did not lay down any
street railway track in Second street aforesaid, between Com-
mercial street and Main street, nor south of Main street, ex-
cept about one hundred feet or less at and near the intersection
of Second street with Commercial street, prior to the com-
mencement of this action, although it was not prevented or
hindered in so doing by any judicial or other proceeding;
but at the time of the commencement of this action, said street
railway company was about to proceed to the laying down of
its track from Commercial street to Main street, and would
have done so if not prevented by injunction.

"9. Before the commencement of this action Second street
had been macadamized from Main street to Commercial street,
the Atchison Union Depot and Railroad Company having fur-
nished the material and paid for the work for so doing from
Main street to a point 175 feet north thereof, and the city for
the remainder of the distance. The grade of the street as
macadamized was higher than the top of the rails of the rail-
road track that had been placed there by said depot company
and Missouri Pacific Railway Company, so that the rails were
covered by the macadam all of the length of the track except
at two or three places where the tops of the rails were slightly
exposed. Said railway track was actually used for only a few
months, and then only for the accommodation train twice a
day, once in the morning and once in the evening. Afterward
the accommodation train started from and stopped at St. Joseph,
and since that time said track in Second street had never been
used. It could be used, however, by clearing the macadam
from the surface of the rails and digging the macadam from
the inside of the rails sufficiently to admit of the flanges of
the wheels dropping between the rails, and putting in the
crossings at the south side of the union depot where crossings
have been removed, and the use of said track might again
become necessary at any time.

"10. Railway coaches are of the width of about ten feet

four inches to ten feet six inches, so that they extend about two feet nine inches beyond the rails. The street railway cars extend only about eight inches beyond the rails. The vibration of railway coaches in motion is about eight inches at the floor of the coach and considerably more at the top of the coach. When passenger, mail and express trains are operated, it requires about 14 feet on each side of the track to comfortably and safely accommodate the business.

"11. The two buildings of plaintiffs, which adjoin each other, were erected with special reference to the carrying on of the wholesale grocery business. The east end or rear of the buildings extends to certain railway side-tracks where goods are principally received into the houses, and there is no access to said buildings by wagons from the rear, and the only access by wagons is from the front or Second street, where most of the goods are taken out and some goods received. Large transfer wagons are and have been mostly used, some of the beds thereof having level and others thereof slanting surfaces, the slope being toward the rear of the wagons. The most convenient method to load and unload wagons having the slanting surfaces is to back them up with the hind wheels to the curbstone, the wagon then standing crosswise of the street. Farm wagons are also frequently used to load and unload, some having movable end-gates, so that the most convenient method of loading and unloading is also by backing up. The length of a transfer wagon is about 20 to 22 feet, and its width from end to end of axle about $7\frac{1}{2}$ feet. The transfer wagons having a fifth wheel can be turned almost at right angles so as not to occupy much of the street beyond the length of the wagon, though in turning about double that distance is required, and farm wagons not being so constructed, although they are shorter than the transfer wagons, yet they require as much or more room when standing crosswise of the street. If the wagons were all loaded or unloaded from the sides, which it is possible, although not convenient to do, only about eight feet of the street outside of the curbing would be absolutely required, but no wagon could pass it while so standing without running up on the street railway track, provided it was not laid further than 15 feet from the sidewalk.

"12. If said street railway track should be laid 15 feet from the sidewalk on the east side of Second street, the distance between the rails of the street-car track and the railroad track would be only 7 feet and seven inches along the whole of the frontage of said two buildings. This would not be sufficient

space for the railroad coaches and the street cars to pass each other in safety and allow passengers to alight, allowing no space for the handling of baggage, mail and express matter on the east side of the railroad track and between it and the street-car track, and it would be dangerous to the public to allow the street-car track and the railroad track to be so near each other, and with said street-car track as near as 15 feet to the sidewalk on the east side of Second street the business carried on in the plaintiffs' buildings would be seriously interfered with."

"CONCLUSIONS OF LAW.

"1. The defendant ought not to be allowed to lay down its street-car track between the railway track already there and the east side of Second street.

"2. The plaintiffs, Abram Nave and James McCord, and also J. K. Landis, (substituted for G. L. Moulton,) are entitled to a perpetual injunction to restrain the defendant from laying down its track between the railroad track already there and the east side of Second street opposite the buildings of plaintiff, so long as such buildings are used for the purposes for which they were erected.

"3. The defendant ought to be adjudged to pay the costs of this action."

The defendant moved for judgment in its favor upon the findings of fact, and also for a new trial, both of which motions were overruled, and judgment was given in favor of the plaintiffs, perpetually enjoining and restraining the defendant from laying down any track or operating any street railway on Second street in front of the plaintiffs' property, and also for the costs of the action. The defendant removed the case to the supreme court for review.

*Jackson & Royce*, for plaintiff in error.

*W. W. & W. F. Guthrie*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: Two principal questions are brought up by this proceeding for our consideration and decision. The first relates to the objection of misjoinder, and arises on the order overruling the demurrer alleging that several causes of action and several parties plaintiff were improperly joined, and also

in rendering a single judgment in favor of all the plaintiffs upon what are termed independent causes of action. It is argued that the obstruction of access to the Nave & McCord building, which was adjoining and north of the Moulton building, in no way affected the use of the latter, and that the threatened nuisance or obstruction to the Moulton building would not have been an interference with the use and enjoyment of the Nave & McCord property. As a general principle, several plaintiffs having distinct and independent causes of action against a defendant cannot unite in a suit for the separate relief of each. The code provides that where several persons have an interest in the subject of the action and in obtaining the relief demanded, they may join as plaintiffs, (sec. 35;) and also—

"When the question is one of common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Sec. 38.)

The threatened injury or nuisance complained of here is one that is common to all the plaintiffs, and all have a general interest in the relief demanded. In fact, the case falls fairly within the decision of *Palmer v. Waddell*, 22 Kas.

1. Nuisance— joinder of plaintiffs.

352. There the defendant erected an obstruction on a natural water-course, causing the water to overflow and injure the land of the plaintiffs. Although the several plaintiffs were the owners of separate and distinct tracts of land, it was ruled that the overflow was a common injury to all the plaintiffs, and the common interest which they had authorized them to join in a suit as plaintiffs to restrain the nuisance. The same principle is announced in the case of *Jeffers v. Forbes*, 28 Kas. 179, where it is said that the owners of different tracts of land may unite in a single action to abate a common nuisance.

The next point is, that the findings do not sustain the judgment that was rendered. That depends on whether the plaintiffs would suffer an injury special and peculiar to themselves by the threatened nuisance, and also whether the defendant

railway company had any authority or right to construct a railroad in front of their premises. The findings of fact made by the court, which have been stated and need no repetition, sufficiently show, we think, that the injury resulting from the obstruction of the street is one that is special and peculiar to the plaintiffs below and independent of and different from the general injury to the public. The railway company, however, had no right to occupy the street or construct a railroad on the proposed route. While the fee of the streets is in the county, the control of the same in the interest of the public is placed in the city; and before street railways can be built or operated the privilege must be obtained from the city authorities. (*Atchison Street Rly. Co. v. Mo. Pac. Rly. Co.*, 31 Kas. 667; 2 Dill. Mun. Cor., § 724.) It appears that in December, 1881, the mayor and council of the city of Atchison by ordinance granted to the Atchison Street Railway Company the right to build on the street in question at any time within six months from the taking effect of the ordinance. It seems that this privilege was not used, and in May, 1882, another ordinance was passed by the mayor and council authorizing the company to occupy the street, and build its railway at any time within six months after the taking effect of that ordinance; and by both ordinances it was provided that, if the company was interrupted or hindered by an action at law or judicial proceedings, the time of such hindrance or interruption should not be deemed a part of the period in which the company was allowed the privilege of constructing its road. The company did not avail itself of the privilege granted by either ordinance, and it was not hindered or prevented from so doing by any judicial or other proceeding. The case therefore stands, so far as the road in question is concerned, as if no authority to occupy the street had ever been granted to the company. The contention that the privilege granted by the ordinances remains until a forfeiture is declared, is

2. Street railway company; privilege; limited time.

not sound. The permission conferred by the city council was for a limited time, and when that time expired the privilege no longer existed. The grant is not

an irrevocable one, which continues indefinitely, to be accepted or rejected at the option of the company. The consent of the city council to occupy the street is a mere license, and until the company has availed itself of the license no contractual obligation or relation arises which requires a judicial declaration of forfeiture. Until the license is accepted and used, no right vests in the railway company, and it may be revoked by the city council; and after the time within which it may be availed of expires, the license lapses and no revocation is needed to terminate the same. The railway company or licensee cannot thereafter occupy the street or build its road thereon without a new permission from the city authorities. (*G. C. Rld. Co. v. G. C. & S. Rly. Co.*, 63 Tex. 529; same case, 26 Am. & Eng. Rld. Cases, 114; *City of Detroit v. City Rly. Co.*, 37 Mich. 558.) As the railway company had no authority whatever to build the proposed road, some of the questions discussed become unimportant so far as this controversy is concerned, and need not be determined here.

The judgment of the district court will be affirmed.

HORTON, C. J., concurring.

VALENTINE, J.: Believing that the first proposition contained in the syllabus, and the corresponding portion of the opinion, come clearly within the principles enunciated by a majority of this court in the case of *Palmer v. Waddell*, 22 Kas. 352, I concur, although as an original proposition I think it is at least doubtful. As to the remainder of the syllabus and the opinion, I fully concur.