DENISON & SHERMAN RAILWAY COMPANY v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.·

No. 1171.  Decided February 16, 1903.

**1.—Railway—Occupation of City Street—Acceptance of Ordinance.**

The grant to a railway company, by city ordinance, of the right to construct its track in a certain street within specified limits, was sufficiently accepted by the action of the company in building into the city and upon a part of the street in question, though the street was not occupied through all the specified limits, and the assent of the city could not be recalled.  (Pp. 242, 243.)

**2.—Same—Abandonment.**

The fact that the company failed, for five years after building into the city, to extend its tracks along the street through the entire limits granted by ordinance, was only evidence of abandonment, which was a question of fact dependent on many circumstances, and a finding by the trial court involving the conclusion that there had been no abandonment will not, in the absence of a statement of facts, be held erroneous because of such failure to occupy.  (P. 249.)

**3.—Railway—Forfeiture by Failure to Construct Road.**

The right to complete the occupancy of a partly occupied street, under a right to do so granted by city ordinance, was not forfeited by the failure to occupy, through operation of art. 4558, Rev. Stats.  That article was complied with by the completion of the road to the city and the right acquired to make connections and arrange terminals was not affected by the statute.  (P. 249.)

**4.—Right to Occupy Street—Mortgage—Foreclosure.**

The right granted a railway company to occupy a street was not such a mere personal license as to be incapable of transfer or mortgage, and passed to the purchaser on foreclosure sale under mortgage of its property rights, privileges and franchises.  (Pp. 243, 249.)

**5.—Railway—Foreclosure Sale—Rights of Purchaser.**

The purchaser, at foreclosure sale, of the property and privileges of a railway company which had acquired a right to occupy a street with its tracks but had not yet done so, could exercise the right without procuring further consent from the city, and its title to so occupy the street was superior to that of an electric suburban railway to which the privilege was subsequently granted by ordinance before the first grantee had occupied.  (Pp. 241-244.)

Certificate of dissent from the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

*Moseley & Eppstein,* for appellant.—The assent of the city of Sherman previously granted to the St. Louis, Arkansas & Texas Railway Company had not been used by said St. Louis, Arkansas & Texas Railway Company further than to construct a road about 500 feet north of its depot on Lamar street.

The right to build a railroad through any city of this State is a right of eminent domain, which must be obtained from the State. Galveston & W. Railway Co. v. Galveston, 90 Texas, 398; Sayles' Stats., arts. 4426, 4438.

The right of eminent domain must be exercised in conformity with the conditions imposed by the State. Railway Co. v. Meador, 50 Texas, 85.

The assent of the city of Sherman granted to the St. Louis Railway Company to construct its railroad through the streets of the city of Sherman was personal to that company, and as to any part unappropriated, it died when the company died.

The right of a railroad company to build through a city of this State is conditioned upon the assent of the city given to that railroad company. Sayles' Stats., arts. 4426, 4438.

The assent of a city to a railroad company to build upon its streets constitutes a vested right only to the extent of actual appropriation by the railroad within the time provided by law, and defendant's predecessor having constructed a little of its road on East street as much as seventeen years ago, and having made no preparation to construct it further, will be considered to have abandoned any intention to build its road further up East street and to have forfeited such right, and the city council would have the power to grant this right to any other company. Sayles' Stats., art. 4558; Railway Co. v. Railway Co., 2 Texas Civ. App., 650; Bywaters v. Railway Co., 73 Texas, 624; Railway Co. v. State, 81 Texas, 572; Mayor v. Railway Co., 84 Texas, 590; Railway Co. v. Railway Co., 63 Texas, 529; same case, 65 Texas, 503; Railway Co. v. Railway Co., 45 Cal., 373; Toledo, etc., Railway Co. v. Johnson, 49 Mich., 148; Chicago, etc., Railway Co. v. Story, 73 Ill., 541; Chicago v. Railway Co., 105 Ill., 73; Atchison Street Railway Co. v. Nave, 38 Kan., 744; City of Detroit v. Railway Co., 37 Mich., 558.

Where a general right in a street is granted to one company and the right to some particular part in a street is granted to another, the particular grant will hold over the general grant. Fort Worth Street Railway Co. v. Rosedale Street Railway Co., 68 Texas, 169.

*E. B. Perkins* and *Head & Dillard,* for appellee.—The consent of the city given to the St. Louis, Arkansas & Texas Railway Company in the ordinance copied in the findings of fact, to construct, operate and maintain its railroad upon, across and over East street, in the city of Sherman from the point where the Texas & Pacific Railway Company crosses said street to the southern terminus thereof, in connection with the statutes of this State, conferred upon said railway company either property rights, privileges or franchises which passed by the sale in the foreclosure proceedings to the defendant. 2 Batts' Civ. Stats., arts. 4486, 4549; Railway Co. v. City of Galveston, 37 S. W. Rep., 27; Gal-

veston, etc., Railway Co. v. Galveston, 90 Texas, 398; People v. O'Brien, 111 N. Y., 1; 165 N. Y., 274; 22 S. W. Rep., 107.

The question as to whether a railroad company has abandoned a right, privilege or franchise of the kind in question by nonuser is one of fact, and plaintiff not having pleaded such abandonment, and there being no finding of fact upon that issue, and only a partial statement of facts the question can not be considered upon this appeal.

If the question of abandonment by defendant and the St. Louis, Arkansas and Texas Railway Company by nonuser was raised by the pleading of plaintiff, then the failure of the court to make a finding on that issue could only be called in question by bill of exceptions and full statement of facts, in the absence of which it will be presumed that no abandonment was shown by the evidence, and that no request for such finding was made. Tackaberry v. Bank, 85 Texas, 488.

The findings of fact show that there had been no abandonment or forfeiture of the right granted by the city to the St. Louis, Arkansas & Texas Railway Company to construct its road along East street either by that company or the defendant. West Jersey Trac. Co. v. Camden, etc., Co., 1 Am. and Eng. R. R. Cas. (N. S.), 141; 52 N. J. Eq., 452.

A simple failure to construct a railroad the entire length of the street does not result in the forfeiture of a privilege of this kind until there has been a judicial declaration thereof. Railway v. City of Galveston, 37 S. W. Rep., 32; Moseby v. Burrow, 52 Texas, 396, and cases cited; West Jersey Trac. Co. v. Camden, etc., Co., 1 Am. and Eng. R. R. Cas. (N. S.), 141.

The right given by the city to the St. Louis, Arkansas & Texas Railway Company to construct its road over East street did not come within the purview of article 4558, and was not required by said article to be exercised within the time therein specified. 2 Batts' Civ. Stats., art. 4558.

Where authority has been granted by a city to a railway company to construct its road upon a certain street, subsequent authority to another company to construct its road upon a particular part of such street is not valid unless the right given to the first company can be exercised after the second grant. Mayor, etc., v. Houston, etc., 83 Texas, 555; Fort Worth, etc., Railway Co. v. Rosedale, etc., Railway Co., 68 Texas, 181; 1 Lewis Em. Dom., 276; 3 Elliott on Railroads, sec. 1079.

The special findings show such an appropriation of the center of East street under the ordinance in favor of the St. Louis, Arkansas & Texas Railway by said company and defendant, as deprived the city of the right to subsequently grant to Crerar the franchise claimed by plaintiff over that part of said street.

STATEMENT AND QUESTIONS FROM COURT OF CIVIL APPEALS, FIFTH
SUPREME JUDICIAL DISTRICT.

On March 9, 1901, plaintiff brought suit for injunction and for other relief against defendant, alleging, among other things, that plaintiff had the right to lay its tracks and operate its cars from the center of East street between Pecan and Mulberry streets. That the right was exclusive in so far as it affected the construction of other lines of railway in the center of East street. That plaintiff had appropriated the said right of way by planting its poles along the edge of the sidewalk and had strung its span wires between the poles, and had strung its trolley wire on its span wires along the center of East street, preparatory to building its track along the center of same, when the defendant, at night and by force and arms, began the construction of a line of steam railway along the center of East street between Pecan and Mulberry streets, and was so constructing the same with a great number of hands at the time of the filing of the petition. A temporary injunction was granted, and defendant thereafter filed an answer in which it prayed that the plaintiff be also enjoined from interfering with the part of the road that defendant had put down at this place, and a temporary injunction was granted to the defendant.

Upon the trial of the case judgment was rendered in favor of the defendant and plaintiff was perpetually enjoined from building its track on the center of East street between Pecan and Mulberry streets, or from in anywise interfering with the occupation of the center of East street by the defendant. Plaintiff duly excepted and perfected an appeal by writ of error to this court.

The case was tried in the lower court without the intervention of a jury. There is no statement of facts in the record. The court filed its conclusions of fact, which we adopt as follows:

"1. In 1887, the St. Louis, Arkansas & Texas Railway Company was a corporation, duly and legally incorporated under the laws of the State of Texas relating to the incorporation of railways, for the purpose of owning, operating and maintaining a railway, and with such powers, privileges, rights and franchises as may be granted under said laws. By the terms of the charter said railway was authorized to extend, among other places, through Grayson County, and into the city of Sherman, in Grayson County, Texas.

"2. In the year 1887, and for several years prior and subsequent thereto, and until the year 1895, the city of Sherman was a corporation, duly and legally incorporated under the general laws of the State of Texas for the incorporation of cities of more than one thousand and less than ten thousand inhabitants. About the year 1895 it was incorporated by special act of the Legislature, but the powers are not materially different from such as it had while incorporated under the general laws.

"3. East street, prior to and during 1887, was and since then continuously has been a street established in the city of Sherman, running

from the north boundary line thereof to or near the south boundary line thereof. The Texas & Pacific Railway, running east and west, crossed East street at a point a trifle over half a mile from the north boundary line. The first street running east and south of the Texas & Pacific Railway is Mulberry street; the next is Pecan street, the next is Houston street, the next is Lamar street, and the next is Cherry street.

"4. On the 21st day of February, 1887, the city council of the city of Sherman passed the following ordinance:

" 'An ordinance granting right of way to the St. Louis, Arkansas & Texas Railway Company over East street.

" 'Section 1. Be it ordained by the city council of the city of Sherman, that the permission of said city be and the same is hereby given to the St. Louis, Arkansas & Texas Railway Company to construct, operate and maintain its railway upon, across and over East street in the city of Sherman from the point where the Texas & Pacific crosses said street to the southern terminus thereof.

" 'Sec. 2. That the permission of the city of Sherman is hereby granted to the St. Louis, Arkansas & Texas Railway Company to build across and upon the streets that intersect East street from the crossing of the Texas & Pacific Railway Company south to their terminus of East street, to the extent that may be necessary in operating their railroads.

" 'Sec. 3. The rights and privileges hereby granted is and shall hereby be construed to be a condition that the said railway company shall construct and keep in repair all necessary street crossings, and shall at all times conform the grade of said road to the grade of said street as the same now exists or as the same may hereafter be established by the city council of the city of Sherman.

" 'Sec. 4. That this ordinance take effect and be in force from and after its passage.'

"5. The St. Louis, Arkansas & Texas Railway Company acted on said ordinance, and subsequent to the passage of such ordinance, and about June or July, 1897 [1887], the St. Louis, Arkansas & Texas Railway Company, which was then constructing its railway, built into the city of Sherman. It established its depot north of Cherry street and just south of and adjoining Lamar street, and continued its tracks northward along East street and in the center thereof to a point just south of and near Houston street, where said track remained without extension until about the year 1891.

"6. The St. Louis, Arkansas & Texas Railway Company executed certain mortgages on its railway properties, privileges and franchises to secure certain bonds executed by it, and on the 8th day of June, 1889, suit was filed in the United States Circuit Court for the Eastern District of Texas to foreclose these mortgages. On the 24th day of July, 1890, this suit resulted in a decree of foreclosure on all the rights, privileges and franchises and properties of every kind and character of the St. Louis, Arkansas & Texas Railway Company, and the same were duly ordered by the court foreclosing the mortgage to be sold

in satisfaction of the amount found to be due on the bonds. Under this decree sale was duly and regularly made in October, 1890. Sale was confirmed on the 9th day of December, 1890, and deed was ordered made to the purchaser of said property, the St. Louis Southwestern Railway Company of Texas, of all rights, properties, privileges and franchises of the St. Louis, Arkansas & Texas Railway Company, and under and by virtue of the orders and directions of the United States Circuit Court for the Eastern District of Texas, having control and jurisdiction of the same, in November, 1891, all the properties, privileges, rights and franchises of the St. Louis, Arkansas & Texas Railway Company passed to and vested in the St. Louis Southwestern Railway Company of Texas, as purchaser under the foreclosure sale.

"7. The St. Louis Southwestern Railway Company of Texas is a corporation duly and legally incorporated under the laws of the State of Texas in such cases made and provided, for the owning, maintaining and operating of a railway, with all the rights, powers and privileges granted by such laws. Such acts of incorporation took place about the year 1890, and said railway succeeded to the rights, powers, privileges and franchises of the St. Louis, Arkansas & Texas Railway Company, and said railway has continuously since May, 1891, at which time said properties were delivered to it, operated the former lines of the said St. Louis, Arkansas & Texas Railway Company, including that portion of the line running through Grayson County, and to and into the city of Sherman and up East street, as aforesaid.

"8. About the year 1892 the St. Louis Southwestern Railway Company of Texas extended the part of said railway to [in] East street northward about 200 feet across Houston street and to a point about 100 yards south of Pecan street.

"9. The Denison & Sherman Railway Company is duly and legally incorporated as a local and suburban railway, under section 2, art. 4352, chap. 1, title 94, of Sayles' Texas Civ. Stats., with authority to construct and maintain a local suburban railway from the southern boundary of the city of Denison to the northern and eastern boundary of the city of Sherman, a distance of less than ten miles, and in addition thereto a distance of five miles in each of said cities of Denison and Sherman and on the streets thereof, and that its trackage in the city of Sherman does not amount to five miles.

"10. On the 16th day of May, 1900, the city council of the city of Sherman passed an ordinance, which was duly approved, granting to John Crerar, his heirs and assigns, the right to build, construct and operate a line of electric railway over certain streets in the city of Sherman, which was duly approved, a copy of which is hereby attached and marked exhibit A, and made a part thereof. Soon thereafter said franchise created by said ordinances was duly assigned to the Denison & Sherman Railway Company. Thereafter, on the 28th day of September, 1900, the city council of the city of Sherman duly passed, which was subject to approval, ordinance hereto attached and made a

part thereof, and marked exhibit B. Each of the said ordinances was duly accepted by the said John Crerar, and said franchises created by said ordinances were, subsequent to their passage, for value, assigned by John Crerar to the Denison & Sherman Railway Company. The city council of the city of Sherman had notice of the assignment of said ordinances by John Crerar to the Denison & Sherman Railway Company. Thereafter, on the 27th day of February, 1901, the city council of the city of Sherman passed an ordinance, which was duly approved by the mayor, granting directly to the Denison & Sherman Railway, its successors and assigns, for the full term of fifty years, the right to construct, etc., a line of railway on Maxey street, from Lamar street northward, using the following language: 'Section 1. The right is hereby given and granted to the Denison & Sherman Railway Company, its successors and assigns, to construct, etc., a railway, etc., over the center of Maxey street, from Lamar street northward, crossing its line on Crockett street. Also, from Maxey street over and along the center of Pecan street as far as will connect with its line of railway on East street, and to erect poles, etc.' And plaintiff claims said ordinance to be recognition of the city council of the city of Sherman of the validity of the assignment aforesaid, and of the ownership of the Denison & Sherman Railway of the franchise over East street.

"11. On the —— day of ——, the Denison & Sherman Railway Company erected poles on either side of East street, between Mulberry and Pecan streets, the poles being placed on the outer edge of the sidewalk on each side of East street, and having a space between them of thirty-nine feet and six inches. Said poles were placed opposite to each other and connected with wires, called span wires, and in the center of said wires there was attached a trolley wire running practically over the center of East street from north to south, between Mulberry and Pecan streets, and was at the south end of this block turned westward on Pecan street, and was on the north end of this block turned eastward on Mulberry street, being a connection of the proposed line from the union depot of the Houston & Texas Central Railway Company and the Texas & Pacific Railway Company at the foot of Mulberry street along and by the Missouri, Kansas & Texas Railway Company's depot on Pecan street, up and by the principal hotel on Travis street, southward on Travis street onto Lamar street, and eastward on Lamar street to the union depot of the St. Louis Southwestern Railway Company and of the Santa Fe Railway Company. While the poles and wires of the Denison & Sherman Railway Company were in the condition aforesaid, on the night of the —— day of March, 1901, the St. Louis Southwestern Railway Company of Texas, without notice to or consent of the plaintiff company, partly laid its track on East street, between Pecan and Mulberry streets, and was working on said track when the injunction in this case was served. Said line of railway, iron and ties were placed along the center of East street under the trolley wires of plaintiff company which had previously been

erected. The Denison & Sherman Railway Company had erected these poles and wires in the daytime and publicly.

"12. That it is impracticable for the plaintiff and defendant railway companies each to build and operate a line of railway on East street, and that the construction by plaintiff of its line in the center of East street will have the effect of excluding defendant from the use of the street between Pecan and Mulberry streets."

At a former day of the present term of this court the judgment of the trial court was affirmed by the majority of the court. Associate Justice Bookhout at the time dissented, and notice of his dissent was incorporated in the judgment. His dissenting opinion having been filed, we have concluded to certify the points of dissent to the Supreme Court for their opinion thereon, as follows:

Question 1. Did the St. Louis, Arkansas & Texas Railway Company, under the facts stated, accept the privilege or license granted it by the city of Sherman over the entire portion of East street stipulated in the ordinance, or to that part only over which it constructed its road? If yea, then, under the facts, did said company abandon the license or privilege to that part of East street over which it failed to construct its road?

Question 2. Under the facts found, did the said company, under the provisions of art. 4558, Rev. Stats., forfeit its charter and its corporate existence and authority, and the privilege to construct its road over that part of East street over which the city had granted it the right to construct its road but which it had not used? If this question is answered in the negative and question number 4 is answered in the affirmative, then, was there such forfeiture by defendant in error?

Question 3. Was the license or right granted by the city of Sherman to the St. Louis, Arkansas & Texas Railway Company personal to that company and, in so far as said company had failed to construct its road and make use of the same, incapable of being mortgaged and conveyed by a sale under foreclosure proceedings of such mortgage? (See condition in section 3 of the ordinance.)

Question 4. Under the facts stated, did the license or right granted to the St. Louis, Arkansas & Texas Railway Company to build a railroad over East street, but which the said company had not used and over which it had failed to construct its road, pass to the defendant in error by the mortgage, foreclosure proceedings, sale and conveyance thereunder?

Question 5. Is the defendant in error, under the facts, authorized to construct and extend its railroad over and along East street and in the center thereof under the authority granted to the St. Louis, Arkansas & Texas Railway Company in 1887, without defendant in error procuring the consent of the city of Sherman to do so?

If yea, is such right superior to that of plaintiff in error?

### OPINION OF COURT OF CIVIL APPEALS.

TEMPLETON, ASSOCIATE JUSTICE.—In 1887 the St. Louis, Arkansas & Texas Railway Company of Texas, a corporation duly incorporated under the laws of this State, constructed a branch line of road from Commerce, in Hunt County, to Sherman, in Grayson County. On February 21, 1887, and before the road was built into Sherman, it applied for and formally obtained from the corporation of the city of Sherman the assent of said city to the construction of its road upon and over East street, one of the public streets of the city, from the point where the line of the Texas & Pacific Railway Company crossed said street to the southern terminus thereof. The assent was unconditional. East street runs north and south and extends from the north boundary line of the city to or near the south boundary thereof, and the Texas & Pacific Railway, which runs east and west, crosses the said street about one-half mile from its northern terminus. The first street south of the Texas & Pacific Railway, running parallel with the railway, is Mulberry; the next is Pecan; the next is Houston; the next is Lamar, and the next is Cherry. The said branch line from Commerce to Sherman was completed to Sherman in the summer of 1887. The depot was located on East street, north of Cherry and just south of and adjoining Lamar. The track of the road was laid in the center of East street and extended from the southern terminus of said street to a point just south of and adjoining Houston street. No further extension was made until 1892.

In 1890, a mortgage theretofore given by the St. Louis, Arkansas & Texas Company was duly foreclosed in the Circuit Court of the United States for the Eastern District of Texas against all the properties, rights, privileges and franchises of the said company. The sale under foreclosure took place in October, 1890, and was confirmed in December following. Conveyance was duly made to the purchaser, the St. Louis Southwestern Railway Company, and in November, 1891, that company took possession of the railway system it had purchased, and has, ever since that time, operated the same. The said purchasing company was chartered in 1890 and succeeded to the rights, powers, privileges and franchises of the sold-out company, and by virtue of its purchase acquired all the properties, rights, privileges and franchises of its predecessor.

In 1892 the new company extended its line of road up East street about 200 feet, to a point north of Houston street, about 100 yards south of Pecan street.

The Denison & Sherman Railway Company was duly and legally incorporated as a local and suburban railway, under sec. 2, art. 4352, chap. 1, title 94, Sayles' Civ. Stats., with authority to construct and maintain a local suburban railway from the southern boundary of the city of Denison to the northern and eastern boundary of the city of

Sherman, a distance of less than ten miles, and in addition thereto five miles in each of said cities. In 1900, the council of the city of Sherman granted to John Crerar, his heirs and assigns, the right to construct and operate an electric railway over that portion of East street lying between Mulberry and Pecan streets. Soon thereafter the franchise was assigned to the Denison & Sherman Railway Company. In 1901 the said company set its poles and strung its wires on East street between Mulberry and Pecan streets, but before it could lay its ties and rails, the St. Louis Southwestern Company extended its track up East street beyond Pecan, and was in the act of building to and across Mulberry, when the Denison & Sherman Company brought this suit against it to enjoin the completion of the work. A temporary injunction was granted, but on final trial the same was dissolved and all relief denied. The Denison & Sherman Company has appealed by writ of error.

The matter in controversy is the right claimed by the St. Louis Southwestern Company to build its road over East street, between Pecan and Mulberry. The principal question in the case is whether the right possessed by the St. Louis, Arkansas & Texas Company to build on East street has been acquired by the defendant in error.

Our laws provide that railway companies may build across and upon the streets of a city, but only on condition of obtaining the assent of the city thereto. Rev. Stats., arts. 4426, 4438. When the consent of the city has been secured, the right of the company to build over and upon the streets named in the concession is complete. No further action is necessary as a prerequisite to a lawful appropriation. When the assent of the city has been given and acted upon, it can not be recalled. When the city consents, in due form, to the use of any particular street or streets by a railway company for right of way purposes and the company accepts the privilege, the right becomes vested, fixed and certain, and can only be revoked in an action to forfeit brought by authority of the State. Railway Co. v. Brownsville, 45 Texas, 96; Street Railway Co. v. Street Railway Co., 68 Texas, 169; Railway Co. v. Galveston, 90 Texas, 398; Arcata v. Railway Co., 28 Pac. Rep. (Cal.), 676.

Our laws further provide for the sale, under foreclosure, of the entire roadbed, track, franchises and chartered rights of a railroad company and prescribe the rights of the purchasers at such sale. Rev. Stats., arts. 4549, 4550. The purchasers are vested with all the rights, privileges and franchises of the foreclosed company, and are given the option of continuing the business in the name of the old corporation or of organizing a new corporation for that purpose.

The right of way in controversy was part of the railway system of the St. Louis, Arkansas & Texas Company and, as such, was covered by the lien of the mortgage creditors. It could be legally sold under foreclosure as a part of the said railway system. The fact that the purchasers elected, in the exercise of the option given by the statute, to form a new corporation to take the property, did not have the effect to destroy the title to the right of way which they acquired by their purchase.

The St. Louis Southwestern Company was organized as the successor of the foreclosed company. It began business with no other properties, rights, privileges and franchises than those acquired by its purchase and those conferred by its charter. Every duty of a public nature which lay upon its predecessor was assumed by it and no obligation in conflict therewith rested upon it. No reason, affecting the public, existed why the said company should not have been permitted to acquire the right of way in controversy together with the other parts of the railway system to which it belonged. When acquired by the purchasing company, it was held upon exactly the same terms and conditions as those which accompanied the right and title of the foreclosed company.

The concession of the right of way to the original company was not personal in a sense which would preclude the transfer thereof to the successor of that company. The grant was to the company owning and operating the railway system in question and made the right of way over East street a part of such system. Any company capable under our laws of taking the whole system could take every part thereof, including the said right of way. It is doubtless true that the concession could not have been legally segregated from the system and assigned to an independent company; that, in this sense, the grant was personal to the company receiving it. But there has been no attempt to make such disposition of the concession or to use the same for any purpose other than those for which it was granted.

The charter of the St. Louis Southwestern Company conferred upon it the general power to occupy the streets of the city of Sherman for right of way purposes, subject to the condition precedent that it obtained the assent of the city, but that fact did not require it to surrender the right of way over East street which it had acquired by its purchase, and reacquire the same by the exercise of its charter powers.

There is no question that the assent of the city to the use of East street was accepted. The old company built upon and occupied a portion of the street, and the new company, after its purchase, assumed possession of the track which had been placed in the street by its predecessor and extended the track some distance farther toward the point destined for its terminus. If it has not used reasonable diligence in completing the extension, the State or the city, and not the plaintiff in error, is the proper party to insist on a forfeiture.

The evidence relating to the foreclosure and the sale thereunder is not contained in the statement of facts, the trial judge's conclusions on those issues being accepted by both parties. The judge found that all the properties, rights, privileges, and franchises of the St. Louis, Arkansas & Texas Company passed to and vested in the St. Louis Southwestern Company. The list is certainly comprehensive enough to include the right of way in controversy, and we must assume that the finding is supported by the evidence. It will be further assumed that the St. Louis Southwestern Company was organized for the

purpose of taking over the said properties, rights, privileges and franchises in the manner prescribed by law.

Our conclusion is that the trial court did not err in holding that the plaintiff in error was not entitled to an injunction restraining the defendant in error from building its road on East street to a junction with the track of the Texas & Pacific Company.

The trial judge found as a matter of fact that, if the plaintiff in error was permitted to lay its track in the center of East street, it would be impracticable for the defendant in error to exercise its right to build on said street by placing its track between the track of the plaintiff in error and the edge of the street. Complaint is made that the evidence is not sufficient to warrant this finding. After a consideration of the evidence we have concluded that the finding was justified and that the complaint is without merit. The defendant in error has the right to construct and operate its road over East street to a junction with the Texas & Pacific road, and the city of Sherman can not deprive it of the right by authorizing the plaintiff in error to lay its track at such place in said street as will render impracticable the exercise of the right.

The judgment is affirmed.

Delivered November 22, 1902.

### DISSENTING OPINION.

BOOKHOUT, ASSOCIATE JUSTICE.—I am compelled to dissent from the views expressed in the conclusions reached in the opinion by the majority of the court in this case. Owing to the importance of the questions involved, I deem it proper that I briefly express my views thereon.

On the 21st day of February, 1887, the city of Sherman, by ordinance, granted to the St. Louis, Arkansas & Texas Railway Company, a railroad corporation incorporated under the laws of Texas, the right and privilege to construct, operate and maintain a railway over and along East street, a public street in said city, from the point where the Texas & Pacific Railroad crosses said street to the southern terminus thereof. Acting under the privilege granted in said ordinance said railway company, in June or July, 1887, built its railroad in the center of East street from its southern terminus northward to Cherry street where it crosses East street, and there established and erected its depot. At the same time it continued its track northward about 200 feet to a point just south of Houston street, another street crossing East street. In this condition it operated its road until December, 1890, when it was sold out.

Said corporation executed certain mortgages on its property, privileges and franchises to secure certain bonds executed by it, and in June, 1889, suit was filed in the Circuit Court of the United States to foreclose these mortgages. A decree of foreclosure was had on the 24th day of July, 1890, under which a sale was made in October, which was confirmed in December, 1890, and a deed ordered made to the purchaser,

the St. Louis Southwestern Railway Company of Texas, to all rights, properties, privileges and franchises of the sold-out company. The purchasing company was a corporation incorporated under the laws of Texas.

In 1901 the plaintiff in error, under and by virtue of a valid license granted by the city of Sherman, entered upon East street and erected poles on each side of said street preparatory to the construction of its road thereon.

About this time defendant in error, acting solely under the license granted to the St. Louis, Arkansas & Texas Railway Company in 1887, entered upon said street in the nighttime, and without the knowledge or consent of plaintiff in error, began the construction of a railway in the center of East street between Mulberry, and Pecan streets. It was to enjoin defendant in error from building said road that plaintiff in error instituted this suit.

The controlling question presented is: Did the right or privilege to construct, operate and maintain a railroad over that part of East street granted to the St. Louis, Arkansas & Texas Railway Company, and which that company had not used when the foreclosure proceedings were had and the conveyance made to the St. Louis Southwestern Railway Company, pass by such sale to said purchasing company?

The privilege granted by the city of Sherman to the sold-out company to construct, operate and maintain a railroad over East street was a mere license granted to that company, which the city could revoke at any time prior to its acceptance by that company. Nellis on Street Surface Railroads, p. 55, and authorities cited in note 8; 3 Elliott on Railroads, sec. 1079, and authorities cited in note; Belleville v. Citizens Horse Railway Co., 152 Ill., 171. The only acceptance of the ordinance granting said license was the construction by said company of its railroad over that part of East street as above stated and the erection of its depot at Cherry street. This fact, together with the fact that the company operated its railroad as thus constructed for nearly five years, during which time nothing was done by it indicating an intention to make use of or accept the license to construct and operate a railroad over the remainder of the street stipulated in the ordinance, tends strongly to show that the company did not intend to accept the license granted, but to abandon and forfeit the license, except in so far as it had already constructed its road. This inference is strengthened by the fact that it had constructed its depot on the part used and, it would seem, fixed the terminus of its road. Under the facts in the case the license did not vest any right in the licensee until it made use of the same. 3 Elliott on Railroads, sec. 1079.

It is true that ordinarily the company must accept the license upon the terms and conditions upon which it is granted, but the city is not complaining that the road stopped at Houston street instead of building on north to the Texas & Pacific Railroad crossing.

Again, by the terms of art. 4558, Rev. Stats., it is made the duty of

every railroad organized under title 94 of the laws of Texas, as was the St. Louis, Arkansas & Texas Railway Company, within two years after its incorporation, to "begin the construction of its road and construct, equip and put in good running order at least ten miles of its proposed road; and if any such railroad corporation, after the first two years, shall fail to construct, equip and put in good running order at least twenty additional miles of its road each and every succeeding year until the entire completion of its line, such corporation shall, in either of such cases, forfeit its corporate existence and its powers shall cease as far as relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation." This act is self executing, and any railroad corporation organized under title 94 of the laws of this State failing to comply with its terms forfeits its corporate existence as to the unfinished part of its road without the necessity of a judicial declaration thereof.

The St. Louis, Arkansas & Texas Railway Company, in 1890, was insolvent and a foreclosure was had upon its property and franchises and the same were ordered sold and were sold to the St. Louis Southwestern Railway Company, a corporation created and chartered under the laws of the State of Texas prior thereto. Said sale stripped the company of all its property and, it seems, deprived it of the ability to extend its road. The stockholders of the sold-out company never attempted, after the sale of its property, to organize under the charter of the sold-out company or perform any corporate act thereunder. The record does not show that the purchaser of the property of the sold-out company ever attempted to organize under the charter of the sold-out company, even if it be conceded (which is not) that a purchasing corporation was entitled to do so under the terms of art. 4549 of the Rev. Stats.

By the terms of art. 4558, the failure of the St. Louis, Arkansas & Texas Railway Company for nearly five years to make use of the license granted it, and its insolvency, and the sale of all its property, and the failure of the stockholders to reorganize after such sale or make use of said license for nearly fourteen years after the granting thereof, at the end of which time the city granted the license to another company, which last named company entered upon the street and began the construction of its road, operated as a forfeiture of the license granted to said St. Louis, Arkansas & Texas Railway Company in so far as it had not constructed its road and used the same. Sayles' Stats., art. 4558; Sulphur Springs, etc., Railway Co. v. Railway Co., 2 Texas Civ. App., 650; Bywaters v. Railway Co., 75 Texas, 624; Railway Co. v. State, 81 Texas, 572; Mayor v. Railway Co., 84 Texas, 590; Gulf, etc., Railway Co. v. Gulf, etc., Railway Co., 63 Texas, 529; same case, 65 Texas, 503; Oakland Railway Co. v. Brooklin, etc., Railway Co., 45 Cal., 373; Toledo, etc., Railway Co. v. Johnson, 49 Mich., 148; Chicago, etc., Railway Co. v. Story, 73 Ill., 541; Chicago v. Railway

Co., 105 Ill., 73; Atchison St. Railway Co. v. Nave, 38 Kan., 744; City of Detroit v. Railway Co., 37 Mich., 558.

The city of Sherman seems to have taken this view of the matter and intended the last grant as a revocation of its former grant to the St. Louis, Arkansas & Texas Railway Company in so far as said company had not constructed its road over said street. This view is strengthened by the evidence, which fairly shows that it is not practicable for both plaintiff in error and defendant in error to construct and operate their respective roads over said street, and the right was given to the plaintiff in error to place its road in the center of the street.

Conceding, for the purposes of this discussion, that the acts of the sold-out company amounted to an acceptance of the license in its entirety and that the same had not been abandoned or forfeited, did the privilege which the sold-out company had to construct and operate its road over East street between Houston street and the Texas & Pacific crossing pass to the defendant in error by reason of the foreclosure proceedings?

In the opinion of the majority of the court stress is laid upon the provisions of arts. 4549 and 4550, Rev. Stats., as vesting the rights, privileges and franchises of the sold-out company in the purchaser under the foreclosure sale. Article 4549 makes provision whereby the purchaser of the sold-out company "shall be entitled" to organize under the charter of the sold-out company and exercise the powers, privileges and franchises of the sold-out company, which was not done in this case, and hence I can not see that this article has any application. Article 4550 authorizes the purchaser to form a new corporation with all the powers and rights incident thereto under the laws of the State. The purchaser in this case, at the time of its purchase, was a corporation chartered under the laws of the State. It was a new corporation, and by virtue of its charter it took all the powers and privileges conferred by the laws of this State upon chartered railroads. Article 4550 does not vest in the new company the rights, privileges and franchises of the old company, but makes provision by virtue of which the new company may acquire the road and be entitled to all the powers and privileges conferred by the laws of the State upon chartered railroads. It is not by virtue of this article, but by virtue of its purchase, that the new company took title to the property. Such was the holding of this court in Thayer v. Wathen, 17 Texas Civ. App., 383, in which a writ of error was refused. See also 2 Mora. on Corp., secs. 924, 925; Memphis, etc., Railway Co. v. Commissioners, 112 U. S., 609.

The question, narrowed down, is: Do the words used in the mortgage embrace such license or privilege, and if so, did such right pass to the purchaser by the foreclosure proceedings and the conveyance made thereunder? The property mortgaged is designated in the mortgage as "its railway properties, privileges and franchises." In discussing the meaning of the word franchise, Mr. Justice Field, in the case of Morgan v. Louisiana, 93 U. S., 223, uses the following language: "Much con-

fusion of thought has arisen in this case, and in similar cases, from attaching a vague and undefined meaning to the term 'franchises.' It is often used as synonymous with rights, privileges and immunities, though of a personal and temporary character; so that if any one of these exists it is loosely termed a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operation of the corporation, and without which its road and works would be of little value; such as a franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. * * * The former may be conveyed to a purchaser of the road as a part of the property of the company; the latter is personal and incapable of transfer without express statutory direction." This language has been repeatedly approved in later opinions of that court. New Orleans, etc., Railroad Co. v. Miller, 114 U. S., 176. We have no statutory authority authorizing a conveyance of a license granted by a city to construct a railroad over one of its streets. Nor is there any equivalent provision in the statute authorizing the conveyance of such a license. Our statute authorizes a railroad to mortgage "its property and franchises." This language does not expressly, or by implication, authorize the company to mortgage such a license. In so far as said company had constructed its railroad over East street and made use of the license the same was necessary for the use of the railroad, and without it the road could not be operated. It was necessary to the preservation, use and operation of the railroad, and of necessity passed to the purchaser of the property. Chesapeake & O. Railroad Co. v. Miller, 114 U. S., 176. The unused privilege granted by the city of Sherman to the St. Louis, Arkansas & Texas Railway Company to construct its railroad on East street was not necessary or incidental to the existence, preservation or use of the property mortgaged, and purchased by the defendant in error, and hence, in my opinion, it did not pass by the conveyance of the railroad.

Nor does the fact that the purchasing company extended the road about 200 feet and across Houston street, after its purchase, affect the question. If the privilege granted to the sold-out company did not pass to the new company by its purchase, such extension becomes immaterial.

Again, the ordinance granted the franchise to the St. Louis, Arkansas & Texas Railway Company. The grant is not to that company, "its successors and assigns." By the terms of the ordinance the grant is made a privilege personal to that company. Such personal privilege would not pass by a conveyance of the property and franchises of the company. It is held that immunity from taxation of a railroad company is personal to that company and does not pass by a conveyance of its property.

Chesapeake & O. Railroad Co. v. Miller, 114 U. S., 176; Picard v. East · Tennessee Railroad Co., 130 U. S., 637. See also vol. 9, p. 944, and vol. 10, p. 1046, Rose's Notes on U. S. Reps.

Filed December 18, 1902.

WILLIAMS, ASSOCIATE JUSTICE.—Certificate of dissent from the Court of Civil Appeals for the Fifth District. (The certificate and opinions accompanying it will be included in the report of the case.)

After a careful consideration of the case, we are of the opinion that the majority of the court reached correct conclusions upon those of the questions certified, which were treated in the majority opinion; and we deem it unnecessary to consume time in the discussion of those points, merely to state the same conclusion in different language. This disposes of all of the questions stated in the certificate except the last part of the first, relating to abandonment, and the second and fourth, as to the application of art. 4558, Rev. Stats.

Neither the district judge nor the Court of Civil Appeals has made any express finding on the subject of abandonment. The judgment rendered involves the conclusion that there had been none. This court is asked to decide, upon certain facts stated in the findings, whether or not an abandonment had taken place. We could only hold the affirmative of this question in case the evidence conclusively established the fact. This would be an inference which does not necessarily result from the facts recited. Many circumstances, besides those stated, might affect the question. As there is no statement of facts and the question has not been expressly passed upon by the courts below as a question of fact, we can not hold, as a matter of law, that there was an abandonment. The delay in extending the tracks of defendant in error is, at most, only evidence of the fact, to be weighed by the trial court and the Court of Civil Appeals.

We are of the opinion that article 4558 has no application to the case. The completion of the road to Sherman was a compliance with that statute as to this part of the road, and we do not think that the right which had been acquired to make connections and arrange terminals in that city would be forfeited by noncompliance with the provisions referred to in the construction of some other parts of the line.

*Majority opinion sustained.*